685 F.2d 1149
 29 Fair Empl.Prac.Cas. 1345,
34 Fair Empl.Prac.Cas. 240,
30 Empl. Prac. Dec. P 33,118
Ruby J. GIFFORD, Plaintiff-Appellant,
v.
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a
Corporation; Brotherhood of Railway and Airline
Clerks, Defendants-Appellees.
 Nos. 80-5074, 80-5169 and 80-5246.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 9, 1981.
Decided Aug. 31, 1982.
As Modified on Denial of Rehearing Oct. 25, 1982.
As Corrected Nov. 9, 1982.
Rehearing En Banc Denied Dec. 20, 1982.
 
 Bennett Rolfe, LeBel & Rolfe, Santa Monica, Cal., for Gifford.
 Mitchell M. Kraus, Rockville, Md., argued for defendants-appellees; Richard L. Rosett, Raymond W. Thomas, Los Angeles, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before WRIGHT and FLETCHER, Circuit Judges, and EAST,* District Judge.
 FLETCHER, Circuit Judge.
 
 
 1
 Plaintiff Gifford appeals from the grant of summary judgment to defendants Santa Fe and the Brotherhood of Railway and Airline Clerks (Union) in her Title VII action, 42 U.S.C. § 2000e et seq. We note jurisdiction under 28 U.S.C. § 1291. We conclude that summary judgment was proper as to one of plaintiff's claims, but improper as to both defendants on the remaining claims. Accordingly, we affirm in part and reverse in part the district court's judgment.
 
 
 2
 * Plaintiff was hired by Santa Fe on April 20, 1944. In 1965, she was working as an "extra board printer clerk." On October 1, 1965, Santa Fe and the Union signed a new collective bargaining agreement which required extra board printer clerks to accept assignments at all locations in their district. Prior to the 1965 agreement, extra board printer clerks could elect to accept assignments only at their home point without loss of seniority. For the purposes of summary judgment the parties stipulated that both the Union and the employer recognized that the new rule would probably cause several female printer clerks to quit and that more women than men, in fact, resigned or were discharged as a result of the new policy.
 
 
 3
 On three occasions in 1966, plaintiff was asked to accept assignments at points other than her home point of Bakersfield. On all three occasions, she refused the assignment and immediately resigned. The parties stipulated that if she had not resigned, she would have been fired. On all three occasions she was rehired almost immediately by Santa Fe. Because of her resignation and rehire, she lost all of her accrued seniority rights and other benefits.
 
 
 4
 In 1967, plaintiff stopped paying the union dues required by the contract. According to plaintiff, her failure to pay was the result of her continuing dispute with the Union and Santa Fe over the changed work rule and her consequent loss of benefits. During 1967 the Union sent her three notices that her dues were delinquent. On November 20, 1967, the Union requested Santa Fe to terminate plaintiff for nonpayment of dues, pursuant to the Union security clause. On November 29, plaintiff wrote to Santa Fe and to the Union, stating that she was tendering her delinquent dues under protest, and that she intended to file a charge with the EEOC. The Union did not accept the tendered dues. On December 4, she sent a letter to the EEOC.
 
 
 5
 On December 6, Santa Fe wired plaintiff to inquire whether her November 29 letter constituted a request for a hearing on her termination. She responded by wire the same day, although for some reason the wire did not reach Santa Fe until December 21, after the time for requesting a hearing had expired. Plaintiff was terminated without a hearing on December 22, 1967.
 
 
 6
 Plaintiff filed a formal charge with the EEOC on January 4, 1968. The EEOC did not issue a right-to-sue letter until August 24, 1977. The EEOC was apparently pursuing conciliation efforts and considering filing suit itself during the nine years' delay. Plaintiff's suit was timely filed after her receipt of the right-to-sue letter.
 
 
 7
 Defendants moved in the district court for dismissal, asserting untimely filing of the suit and laches. The motion was denied by minute order. Defendants then moved for summary judgment on the ground that plaintiff's charge to the EEOC was not timely filed and that plaintiff had failed to state a claim. The trial court granted summary judgment to both defendants on January 24, 1980. On appeal, plaintiff argues that her charge to the EEOC was timely filed, and that there were unresolved issues of material fact so that summary judgment was improper. Defendants argue that the charge was not timely, that plaintiff failed to state a claim and that although they did not appeal the denial of summary judgment on the basis of laches, even if plaintiff timely filed the charge with the EEOC and has stated a claim in the complaint, the judgment below should be affirmed on the alternate basis that plaintiff was guilty of laches as a matter of law.
 
 II
 LACHES
 
 8
 The district court, in denying defendants' motion for summary judgment on the ground of laches, must have concluded either that there were disputed issues of material fact or that plaintiff was not guilty of laches as a matter of law. This court could affirm the judgment for defendants on the grounds of laches only if we conclude that there are no remaining issues of fact, and that plaintiff was guilty of laches as a matter of law.
 
 
 9
 Laches is an equitable doctrine, its application depending on the facts of the particular case. This court has affirmed the dismissal on the ground of laches of both private Title VII suits, Boone v. Mechanical Specialities Co., 609 F.2d 956 (9th Cir. 1979), and suits brought by the EEOC, EEOC v. Alioto Fish Co., 623 F.2d 86 (9th Cir. 1980). In both cases, the district court had found unreasonable and unexplained delays in bringing suit. In Boone, this court emphasized that "(I)n the present case we state the exception and not the general rule. Normally, it may be reasonable for an aggrieved employee to allow the EEOC to retain jurisdiction over a Title VII action." 609 F.2d at 960 (footnote omitted). Boone involved a plaintiff who, the court found, had deliberately delayed seeking a right-to-sue letter. Ordinarily, if the EEOC retains control over a charge, a private plaintiff will not be charged with its mistakes. See, e.g., Watson v. Gulf & Western Industries, 650 F.2d 990, 992 (9th Cir. 1981).
 
 
 10
 In the instant case, plaintiff's attorney submitted an extensive affidavit in response to defendants' motion for summary judgment, detailing repeated and continuous efforts of plaintiff and her attorneys to monitor the progress of her charge through the EEOC. Documents were also submitted showing that the EEOC had found reasonable cause to believe that plaintiff had been discriminated against. Plaintiff's attorney also alleged that the EEOC had informed him on several occasions that it intended to file suit on plaintiff's behalf. The district court did not err in denying summary judgment on the ground of laches because it is apparent there are material factual issues to be resolved. Accordingly, we decline to affirm on the alternate basis of laches.
 
 III
 THE MERITS
 
 11
 In her complaint, Gifford alleges four distinct violations of Title VII. She alleges: (1) that the provisions of the 1965 bargaining agreement had a discriminatory effect on her continuing until the day she was terminated; (2) that the employer continually refused to promote her to the position of wire chief, a position for which she was at all times eligible until the time of her termination; (3) that her termination for nonpayment of union dues was actually in retaliation for her threat to file a charge with the EEOC, rather than for nonpayment of dues; (4) that her termination resulted from her continued opposition to policies she considered discriminatory. Summary judgment was granted defendants on the first claim on the ground that the charge was not timely filed with the EEOC. As to the remaining three, there was no contention that the charge was untimely. Summary judgment was granted to defendants on the merits. We conclude that the charge on the first claim was not timely filed and that summary judgment was proper on the first claim only. Summary judgment on the merits of each of the other three claims was improper.
 
 A. The 1965 Agreement
 
 12
 Plaintiff alleges that the policy on extra board printer clerks contained in the 1965 bargaining agreement was instituted with the knowledge and intent on the part of the Union and the employer that the policy would be disadvantageous to women. The parties stipulated that the policy did cause a larger number of women than men to resign. Plaintiff alleges that this was because more of the women were unwilling and unable to travel long distances on short notice to accept temporary assignments. The women, including plaintiff, either resigned to avoid being fired, or were fired for violating a rule on insubordination. The facts alleged by plaintiff constitute both disparate impact and disparate treatment claims under Title VII. See Heagney v. University of Washington, 642 F.2d 1157, 1163 (9th Cir. 1981).
 
 
 13
 Before reaching the merits of these claims, however, we must determine whether the challenge to the extra board printer clerk policy was timely filed with the EEOC. At the time plaintiff filed her charge with the EEOC, the statute permitted only 90 days after a discriminatory act in which to file a charge. The statute was amended in 1972, however, to allow 180 days. The new limit is applied to charges pending in 1972. Inda v. United Air Lines, Inc., 565 F.2d 554, 560-61 (9th Cir. 1977). In states such as California that have their own enforcement agencies, a complainant has 300 days in which to file a charge. See Watson v. Gulf & Western, 650 F.2d at 992. Accordingly, plaintiffs charge was timely if filed within 300 days after any discriminatory act. Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); United Air Lines, Inc. v. Evans, 431 U.S. 553, 555, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1971).
 
 
 14
 Plaintiff characterizes her challenge to the extra board printer clerk policy as one based on a continuing violation of Title VII. She contends that because the policy continued in effect and was never discontinued during her tenure, she could have been disadvantaged by it any time by being forced to resign or accept distant assignments. Plaintiff is correct in arguing that an employment policy may constitute a continuing violation of Title VII and hence support a charge of discrimination filed at any time the policy is in effect by an employee subject to the policy. In Williams v. Owens-Illinois, Inc., 665 F.2d 918, 924 (9th Cir. 1982), we noted by way of illustration that:
 
 
 15
 [a] minority employee who is not promoted in 1973, for example, and is subject to a continuing policy against promotion of minorities, may then file a timely charge in 1976, because the policy against promoting him or her continued to violate the employee's rights up to the time the charge was filed.
 
 
 16
 Thus if plaintiff was employed by Santa Fe in a position subject to the allegedly discriminatory extra board printer clerk policy at any time within 300 days of the date on which she filed charges with the EEOC, her challenge to the policy would be timely.
 
 
 17
 It appears beyond dispute from the record in this case, however, that plaintiff was last employed by Santa Fe in a position subject to the extra board printer clerk policy in April of 1966, more than 300 days before she filed charges challenging the policy. Although plaintiff was rehired by the Railway in May of 1966 and continued to work for the company until December of 1967, this last reemployment was in a regular position not subject to the extra board provision of the 1965 agreement.
 
 
 18
 As we noted in Williams v. Owens-Illinois, Inc.,
 
 
 19
 [a] refusal to hire or a decision to fire an employee may place the victim out of reach of any further effect of company policy, so that such a complainant must file a charge within the requisite time period after the refusal to hire or termination, or be time-barred. If in those cases the victims can show no way in which the company policy had an impact on them within the limitations period, the continuing violation doctrine is of no assistance or applicability, because mere "continuing impact from past violations is not actionable. Continuing violations are."
 
 
 20
 665 F.2d at 924 (quoting Reed v. Lockheed Aircraft Corp., 613 F.2d 757, 760 (9th Cir. 1980)). In the instant case, plaintiff's reemployment with Santa Fe in a regular position placed her "out of reach of any further effect" of the allegedly discriminatory extra board printer clerk policy.[1] There was no longer a continuing violation with respect to her. She therefore had 300 days from her last employment on the extra board in which to file charges challenging the assignment away from home provisions of the 1965 agreement. This she failed to do and we are accordingly compelled to hold that her challenge to the extra board printer clerk policy is time-barred.
 
 B. Refusal to Promote
 
 21
 Plaintiff's second claim is that defendant Santa Fe consistently failed to promote her to the position of wire chief, a position for which she was qualified, although she never applied. She contends that her failure to apply was the result of Santa Fe's well-known policy of excluding women from the job. Santa Fe responds that the position of wire chief required the lifting of 25 pounds or more, and that at the time, state protective legislation prevented it from hiring women in jobs requiring lifting. Plaintiff agrees that such legislation existed and had not yet been held invalid. See Rosenfeld v. Southern Pacific Co., 444 F.2d 1219, 1225 (9th Cir. 1971). However, she also contends that lifting was not necessary to the job of wire chief, and that Santa Fe could and should have required other employees to do what little lifting was necessary.
 
 
 22
 The threshold question is whether it was necessary for plaintiff to allege that she applied for the position of wire chief in order to make out a prima facie case. Plaintiff contends that it was not. She is correct if the employer's promotional policies made application futile, or if the employer normally initiated the promotion. Reed v. Lockheed Aircraft Corp., 613 F.2d 757, 761 (9th Cir. 1980). Plaintiff's allegation that an application would have been futile because of Santa Fe's prior refusal to hire women for the position of wire chief is sufficient to state a claim.
 
 
 23
 As to Santa Fe's defense of reliance on a state statute, this court held in 1971 that state protective legislation which restricts the employment opportunities of women based on stereotyped characteristics of the sexes is invalid under Title VII. Rosenfeld v. Southern Pacific Co., 444 F.2d at 1224-25. One of the statutes held invalid in that case was the very California statute at issue here. The question of what relief could appropriately be given the plaintiffs was not addressed in Rosenfeld, because no individual plaintiffs remained before the court. In a subsequent case, however, this court held that while reliance on an invalid state statute is not a defense to a Title VII suit, good-faith reliance on the part of the employer may in some cases make it inequitable to award back pay. Schaeffer v. San Diego Yellow Cabs, Inc., 462 F.2d 1002, 1006-07 (9th Cir. 1972).[2]
 
 
 24
 Plaintiff's argument here is somewhat different than that confronted in Rosenfeld and Schaeffer. In both those cases, the protective legislation unquestionably prevented the employment of women in the jobs at issue (heavy lifting in Rosenfeld, 9 hour days in Schaeffer ). Gifford argues that the lifting requirement was not necessary to the job. Even if one were to assume the good-faith reliance of Santa Fe on the statute, it is irrelevant since Santa Fe should not have included heavy lifting as a job requirement for wire chiefs.
 
 
 25
 What the court should examine, then, is whether heavy lifting capability is a "bona fide occupational qualification" (BFOQ) for the position of wire chief under the BFOQ exception in Title VII. 42 U.S.C. § 2000e-2(e)(1). Since the lifting element effectively made sex a requirement for the job under then-existing state law, the question to be addressed is whether lifting was "reasonably necessary to the normal operation of that particular business." Id. See Diaz v. Pan American World Airways, 442 F.2d 385, 388 (5th Cir. 1971).
 
 
 26
 The district court held that Gifford had failed to produce any facts to support her assertion that whatever lifting was necessary to the wire chief's job could have been assigned to other available male employees, and that therefore defendants were entitled to summary judgment. What the court failed to recognize, however, is that the BFOQ defense is an affirmative defense. Defendants were required to produce facts in support of the BFOQ claim, rather than plaintiff being required to disprove it. See Harriss v. Pan American World Airways, Inc., 649 F.2d 670, 676 (9th Cir. 1980). If lifting was not "reasonably necessary" to this particular job, then Santa Fe may not plead good-faith reliance on the statute. The facts underlying the BFOQ defense have not yet been addressed by the district court. We conclude that summary judgment on this claim was improper. The district court should consider the merits of plaintiff's claim. Both damages and injunctive relief may be appropriate if the requirement was not a BFOQ. If it was a BFOQ, injunctive relief may still be appropriate since the statute is invalid.
 
 C. Retaliation for Threat to File Charge
 
 27
 Section 2000e-3(a) of Title 42 makes it unlawful to discriminate against an employee in retaliation for the employee's participation in any investigation or proceeding under Title VII. 42 U.S.C. § 2000e-3(a); Sias v. City Demonstration Agency, 588 F.2d 692, 694-96 (9th Cir. 1978). Plaintiff here contends that she was both wrongfully fired and not rehired by Santa Fe, not because she failed to pay her union dues but because she threatened to file a charge with the EEOC. In support of this claim, she alleges that at least two male employees retained their jobs under similar circumstances. The district court held that plaintiff had failed to raise any issues of material fact on these claims because: (1) plaintiff was not similarly situated to the two male employees who were not terminated; (2) plaintiff did not show that it would have been futile to request Santa Fe to rehire her.
 
 
 28
 Although the district court made no finding, it is clear that plaintiff's allegations were enough to establish a prima facie case of retaliation. To do so, she need only show that she was discharged following conduct on her part that constituted protected activity and that the employer was aware of the conduct. Kauffman v. Sidereal, 667 F.2d 767 (9th Cir. 1982); Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976) (per curiam). It is undisputed that Gifford wrote a letter to Santa Fe and the Union prior to her firing, in which she threatened to file a charge with the EEOC.[3] Defendants then advanced a legitimate, nondiscriminatory reason for the firing, i.e., Gifford's failure to pay her union dues. The issue here, then, centers on pretext: did Gifford come forward with enough evidence to create an issue of fact as to whether her failure to pay union dues was merely a pretext for her firing. See Aguirre, 542 F.2d at 781. This question involves a determination of the intent of the Union in requesting and the employer in discharging plaintiff. Summary judgment is generally not proper when the intent of a party is placed in issue. Haydon v. Rand Corp., 605 F.2d 453, 455 & n. 2 (9th Cir. 1979) (per curiam).
 
 
 29
 We conclude that Gifford offered sufficient evidence to raise an issue of fact. The district court erred in deciding as a matter of law that Gifford and the two male employees who were not fired were not similarly situated. Gifford's allegations and her opposition to defendants' motion for summary judgment were supported by the "reasonable cause" determination made by the EEOC.[4] The EEOC, after an impartial investigation, found reasonable cause to believe that Gifford had been treated differently than similarly situated male employees. See Plummer v. Western International Hotels Co., 656 F.2d 502, 505 (9th Cir. 1981); Bradshaw v. Zoological Society of San Diego, 569 F.2d 1066, 1069 (9th Cir. 1978). The EEOC's report was sufficient at least to create an issue of fact on this question. It was therefore improper for the trial court to resolve the issue on summary judgment.
 
 
 30
 We reach the same conclusion on the issue of futility. Gifford argues that it would have been futile to apply for rehire. In support of this argument, Gifford submitted an affidavit in which she stated that a Santa Fe employee had told her that neither she nor anyone with the surname Gifford would ever again work for Santa Fe. Additionally, she submitted a copy of a Santa Fe employment form noting her discharge, and marked "Do Not Rehire." The Santa Fe Superintendent of Communications stated in his deposition that the "Do Not Rehire" notation on the form was unusual, and that he did not understand it. Furthermore, it is stipulated that on the prior occasions when Gifford had resigned and been rehired, Santa Fe had initiated the rehire.
 
 
 31
 On remand, the district court should permit plaintiff to proceed on her claim that the defendants retaliated against her for threatening a Title VII proceeding.
 
 
 32
 D. Retaliation for Opposition to Illegal Practice
 
 
 33
 Title VII also makes it illegal for employers and unions to retaliate against employees for opposing practices made illegal by Title VII. 42 U.S.C. § 2000e-3(a). Plaintiff claims that one of the reasons for her termination was her opposition to the collective bargaining agreement. The district court held that plaintiff lacked a good-faith belief that the agreement was discriminatory, so that she could not rely on this section. The district court reasoned, based on Gifford's deposition testimony, that Gifford believed that the 1965 bargaining agreement discriminated against old but not new female employees, and that although she had complained about the policy since its inception, she did not label it "sex discrimination" until 1967. The court concluded that her initial failure to label the policy as sex-discrimination indicated that her opposition to it was actually based on other grounds.
 
 
 34
 We conclude that the district court analyzed the opposition issue incorrectly. This circuit has held that an employee who opposes employment practices reasonably believed to be discriminatory is protected by the "opposition clause" whether or not the practice is actually discriminatory. Sias, 588 F.2d at 695. It does not follow that the employee must be aware that the practice is unlawful under Title VII at the time of the opposition in order for opposition to be protected. It requires a certain sophistication for an employee to recognize that an offensive employment practice may represent sex or race discrimination that is against the law. Here, Gifford argued from the outset that the collective bargaining agreement had a harsher impact on some of the women than it had on men. It is not necessary that a practice disadvantage all women in order for it to be unlawful under Title VII. See, e.g., Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). A fortiori, an employee who complains of a practice that has a disproportionate impact on a protected group complains of unlawful discrimination and is protected by the opposition clause.
 
 
 35
 Here, the EEOC found reasonable cause to believe the practice objected to was discriminatory. We have held that Gifford's allegations and supporting evidence are sufficient to survive summary judgment on this issue. This is enough to make Gifford's opposition to the collective bargaining agreement activity protected under Title VII. See Sias, 588 F.2d at 695; Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1004-07 (5th Cir. 1969). The district court erred in dismissing this charge for failure to state a claim.
 
 IV
 
 36
 We conclude that summary judgment was proper with respect to plaintiff's challenge to the extra board printer clerk policy contained in the 1965 collective bargaining agreement. As to each of plaintiff's other three claims, however, we reverse the grant of summary judgment and remand to the district court for trial.
 
 
 37
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 WRIGHT, Circuit Judge, concurring specially:
 
 38
 I agree with the result reached by the majority, but the application of laches to a backpay claim deserves some discussion.
 
 
 39
 The delays in this case are astounding. They deserve a detailed recital.
 
 
 40
 Gifford filed charges with the EEOC in January 1968. Sante Fe received a copy of those charges in June 1968. The EEOC completed its field investigation by February 1969. Then ended any effort to attend promptly to the matter. Almost two years passed before the EEOC determined that reasonable cause supported Gifford's charges. Gifford and Sante Fe received notice of the reasonable cause determination in January 1971.
 
 
 41
 In October 1971, the EEOC notified Gifford that a representative would be in Bakersfield soon to meet with her and Santa Fe. No one came. Almost a year and a half later, in February 1973, Gifford wrote to EEOC inquiring about her case. She received no answer.
 
 
 42
 Gifford employed counsel in January 1974, and some efforts at conciliation followed. But in February 1974 Santa Fe notified the EEOC that under no circumstances would it reinstate her. Santa Fe last heard from the EEOC in October 1974, when the agency officially notified it that conciliation had ended.
 
 
 43
 In April 1974, Gifford's attorney requested that a right to sue letter be issued. When he called the EEOC in June 1974, he was told that it was considering filing suit itself and that, if it did so, Gifford could intervene at little additional cost. Gifford and her attorney then awaited the EEOC's decision.
 
 
 44
 From June 1974 to June 1977 the EEOC continually misassigned and mishandled Gifford's file. It was sent to the wrong places, forgotten on desks, and transferred through numerous personnel changes. An affidavit filed with the district court by Gifford's attorney details his calls and letters to the EEOC urging action. The saga was indeed, as one EEOC analyst stated, a "flying dutchman odyssey."
 
 
 45
 Despite the efforts of Gifford's attorney, the EEOC took three years to decide thaat it would not file suit. Had it ddone so in 1977, it faced a strong possibility of dismissal for laches. See EEOC v. Alioto Fish Co., 623 F.2d 86 (9th Cir. 1980) (delay of 20 months after conciliation ended before EEOC filed suit and 62-month delay in total from when charges were filed found unreasonable.).
 
 
 46
 The EEOC finally issued Gifford a notice of right to sue in August 1977, and she brought action soon thereafter. By then, the events underlying the suit were almost ten years old. The clock has not stopped running. After remand here, the case returns for trial. Even with expeditious handling, the trial could not be held before 1983 or later. The prospect of litigation over 15 or 16 year-old facts must give pause, as must the prospect of 15 or 16 years of backpay should Gifford prove her claims.
 
 
 47
 Viewed abstractly, and without assigning blame, the delay clearly is shocking. But laches is an equitable defense, and cannot be applied in the abstract. Nor can it be decided, as Santa Fe urges, as a matter of law on a record that presents unresolved issues of fact.
 
 
 48
 Affidavits from both sides chronicle the defendant's prejudice and plaintiff's actions to expedite the case. But these merely reveal factual disputes and, of greater importance, are insufficient to resolve a laches claim.
 
 
 49
 Dismissal for laches requires inexcusable delay by the plaintiff and resulting prejudice to the defendant. Boone v. Mechanical Specialties Co., 609 F.2d 956 (9th Cir. 1979). Laches applies both to suits brought by the EEOC, EEOC v. Alioto Fish Co. Ltd., 623 F.2d 86 (9th Cir. 1980), and to those brought by private plaintiffs. Boone v. Mechanical Specialties Co., supra.
 
 
 50
 It may bar the entire complaint or only certain claims, the whole remedy sought or only a portion of it. Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 372-73, 97 S.Ct. 2447, 2457-58, 53 L.Ed.2d 402 (1977) (may bar backpay); Albermarle Paper Co. v. Moody, 422 U.S. 405, 424, 95 S.Ct. 2362, 2374, 45 L.Ed.2d 280 (1975) (may bar backpay); EEOC v. Massey-Ferguson, Inc., 622 F.2d 271, 276 (7th Cir. 1980) (may bar entire complaint, certain claims, or backpay); Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 469 (D.C. Cir. 1976) (may limit or preclude backpay); Lynn v. Western Gillette, Inc., 564 F.2d 1282, 1288 (9th Cir. 1977) (may bar or limit backpay); Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir. 1974), rev'd on other grounds, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (may bar entire claim or only portion or just backpay).
 
 
 51
 A district court must examine each claim alleged and remedy sought to determine if sufficient prejudice and delay support defendant's request for dismissal or limitation.
 
 
 52
 Issues of delay and prejudice are intertwined closely. Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 807 (8th Cir. 1979). Shorter delays require greater prejudice. Longer delays require less. Id. Similarly, greater prejudice requires more reason for delay, and less prejudice will allow longer delays for less compelling reasons.
 
 
 53
 A defendant's showing of prejudice will necessarily differ for each claim or remedy it seeks to bar or limit. For example, if a defendant asserts laches to bar a claim of disparate treatment, the court will ordinarily examine the availability of witnesses and records to counter that claim. See, e.g., Boone v. Mechanical Specialties Co., 609 F.2d 956 (9th Cir. 1979).
 
 
 54
 Proof of the reasonableness of delay will not necessarily differ for the various claims and remedies sought. But, because of delay's relationship to prejudice, if delay in seeking a certain type of claim or remedy causes more prejudice than normal, the proof of excuse required may vary accordingly.
 
 
 55
 In addition to the usual prejudice from lost records and dimmed memories associated with defending substantive claims, delay in asserting backpay claims presents the defendant with a distinct prejudice. After an allegedly discriminatory discharge or failure to hire, an employer soon loses touch with the plaintiff. The plaintiff must mitigate any damage, but the defendant bears the burden of proving a failure to mitigate. Sangster v. United Air Lines, Inc., 633 F.2d 864, 868 (9th Cir. 1980). As time passes, meeting this burden becomes progressively more difficult, if not impossible.
 
 
 56
 To prove failure to mitigate, the defendant must show the availability of suitable positions and plaintiff's lack of due diligence in seeking them. Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978). Once an employer has lost contact with the plaintiff, showing availability of positions and plaintiff's lack of diligence could become nearly impossible.
 
 
 57
 Nor is this prejudice to the defendant's burden of proof balanced by a similar prejudice to the plaintiff's proof, as occurs with the plaintiff's substantive claims. A long delay may prejudice a plaintiff in proving her claims as much as a defendant in countering them. See Harris v. Ford Motor Co., 487 Supp. 429 (W.D. Mo. 1980).
 
 
 58
 But once the substantive claim is made, little additional proof is needed for a backpay claim. He or she need only introduce pay scales to show what he or she should have earned. To defend, however, an employer must show other jobs were available and that the plaintiff could havelocated them. The defendant is unlikely to have any of this information in its files.
 
 
 59
 The Seventh Circuit may have assumed prejudice to the defendant when it reduced a Title VII plaintiff's backpay award by the four years from the time she could have requested a right to sue letter and the time of filing suit. Kamberos v. GTE Automatic Electric, Inc., 603 F.2d 598, 603 (7th Cir. 1979), cert. denied, 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981). Because the plaintiff knew she could request a right to sue letter 180 days after she filed charges, the court concluded that she could not increase her award by taking advantage of the EEOC's slowness in processing claims. Id. The court did not discuss prejudice.
 
 
 60
 Kamberos at least suggests that the analysis of laches in asserting backpay claims differs from that in asserting substantive claims. See also Powell v. Zuckert, 366 F.2d 634, 639 (D.C. Cir. 1966). The potential for prejudice to the defendant is great and the plaintiff bears little additional prejudice over and above the burden of proving the underlying claim. Should this defendant reassert laches on remand, as it is free to do, the court should have the distinction in mind.
 
 
 61
 In addition, it should consider whether a plaintiff's delay after conciliation, pending EEOC decision to sue, is reasonable. Gifford argues that she waited for the EEOC because if it filed suit, she could intervene at little or no extra cost. Her affidavit states that she had limited funds for a law suit. Inability to pay legal fees normally does not excuse a delay in filing suit. Powell v. Zuckert, 366 F.2d 634, 636 (D.C. Cir. 1966). Because Title VII provides for attorney's fees, the excuse is even less persuasive.
 
 
 62
 I concur in the remand because the record is inadequate to support finding laches as a matter of law. But I stress that the issue remains open. Should Gifford prove her substantive claims of discrimination, the district court may feel compelled to award backpay for 15 or 16 years. I cannot believe Congress intended such a result.
 
 
 
 *
 Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Gifford claims that even though in May of 1966 she was rehired by Santa Fe in a regular position, she was still subject to the allegedly discriminatory printer clerk policy because, at any time, a more senior regular employee of Santa Fe could "bump" her from regular employment so that she would return to an extra board position. This potential application of the extra board policy to plaintiff is too speculative. It is akin to a terminated employee arguing that because he or she might be rehired, a charge filed more than 300 days after termination is nonetheless timely. See Williams, 613 F.2d at 760. Were plaintiff able to show that her regular position with Santa Fe was limited in duration or that, for some other reason, she would necessarily be returned to an extra board position, we would face a substantially different question
 
 
 [2]
 The district court treated Plaintiff's claim as one solely for damages, and therefore found Schaeffer controlling on the question of relief. Plaintiff in her complaint, however, also sought reinstatement and injunctive relief. Schaeffer is not relevant to the merits of her claim of discrimination, nor to those forms of relief
 
 
 [3]
 We see no legal distinction to be made between the filing of a charge which is clearly protected, Sias v. City Demonstration Agency, 588 F.2d 692, 694-95 (9th Cir. 1978), and threatening to file a charge
 
 
 [4]
 This court held in Plummer v. Western Int'l Hotels Co., 656 F.2d 502, 505 (9th Cir. 1981) that a Title VII plaintiff has an absolute right to introduce the EEOC's reasonable cause determination into evidence