813 F.2d 101
 43 Fair Empl.Prac.Cas. 237,
42 Empl. Prac. Dec. P 36,890, 55 USLW 2500
 CLEVELAND NEWSPAPER GUILD--LOCAL 1, NEWSPAPER GUILD,
AFL-CIO, CLC; Cynthia Reece; C. Victoria Fleming; Alma
Kaufman; Nancy Barnhouse; Judith K. Sammon, on Behalf of
Themselves and Others Similarly Situated, Plaintiffs- Appellants,
v.
The PLAIN DEALER PUBLISHING COMPANY, Defendant-Appellee.
 No. 86-3140.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 8, 1986.
Decided March 6, 1987.
Rehearing En Banc Granted April 29, 1987.*
 
 George W. Palda (argued), Berkman, Gordon, Murray & Palda, Cleveland, Ohio, for plaintiffs-appellants.
 Karen B. Newborn, Baker & Hostetler, Cleveland, Ohio, Elliot S. Azoff (argued), for defendant-appellee.
 Before ENGEL and JONES, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 The question presented by this case is whether reliance on the Equal Employment Opportunity Commission's ("EEOC") administrative process constitutes inexcusable delay for the purpose of applying the laches doctrine to a Title VII case. We hold that such reliance does not create inexcusable delay and, accordingly, reverse the summary judgment entered in favor of defendant.
 
 
 2
 On April 12, 1972, the Cleveland Newspaper Guild ("Guild") filed a charge with the EEOC alleging sex discrimination in merit pay, promotions, assignments and other terms and conditions of employment at The Plain Dealer Publishing Company ("Plain Dealer"). On May 8, 1972, defendant was sent a form notice of the charge of employment discrimination. The notice did not name the person or persons bringing the charge. However, it did state that "[s]ection 1602.14 of the Commissions's Regulations requires the preservation of all relevant personnel records until this charge is resolved." Additionally, the notice asked that defendant withhold any questions about the complaint until the investigation commenced. The form stated that when defendant would be contacted in connection with the investigation was uncertain due to the EEOC's "heavy backlog of pending work."
 
 
 3
 On April 12, 1974, the EEOC sent the Guild a form notice entitled "Charging Party Follow-up." It stated that the EEOC had not been able to process the charge and could not predict when it would begin to do so. Therefore, it asked the Guild to choose one of three possible courses of action: (1) keep the charge open and have it processed when the EEOC could attend to it, (2) sue the Plain Dealer in federal court, or (3) close the charge without further action. In a letter dated September 4, 1974, Jack Weir, then Executive Secretary of the Guild, indicated the Guild's decision to have the EEOC process the charge as soon as possible.
 
 
 4
 The EEOC's investigation began in May of 1976. On May 19, 1976, counsel for the Plain Dealer was given a copy of Charge No. 1613 filed by the Guild on April 12, 1972. Thus, the Plain Dealer knew in 1976 who had filed charges and why. On June 22, 1976, the Plain Dealer requested that the EEOC dismiss the charge on the basis that the four year pendency of the charge had impaired its ability to respond. On June 24, 1976, the EEOC notified the Plain Dealer that it would not dismiss the charge, and it requested documents and information regarding Guild employees for the previous six years. The Plain Dealer, on July 8, 1976, refused to submit the requested information voluntarily.
 
 
 5
 On August 25, 1976, the EEOC issued a subpoena demanding production of the documents previously requested. The Plain Dealer then filed, on September 1, 1976, a petition to revoke and/or modify the subpoena. Over one year later, in September of 1977, the EEOC denied revocation and directed the Plain Dealer to appear at the EEOC for production of the documents. On October 17, 1977, counsel for defendant wrote the EEOC that it would not appear in the offices of the EEOC as ordered. Nothing further occurred in this case until July 30, 1979, when Guild Secretary J. Stephens Hatch wrote to the EEOC concerning the status of the charge. Almost a year later, on June 17, 1980, the EEOC notified defense counsel that the Commission would not seek to enforce the subpoena of August 25, 1976.
 
 
 6
 On July 3, 1980, the Plain Dealer submitted a position paper in response to the Guild's charge. It stated that, because of the lapse of time, management personnel and documents relevant to the charge were no longer available. On October 10, 1980, the EEOC issued a finding of reasonable cause and thereafter commenced conciliation efforts. These efforts proved fruitless, and on May 21, 1982 the EEOC issued a right to sue notice to the Guild. The Guild then filed the instant suit in the district court on August 18, 1982. The defendant filed a motion for summary judgment based on the affirmative defense of laches, and the district court granted the motion.
 
 
 7
 To establish an affirmative defense of laches, the defendant has the burden of proof to show both an unexcusable or unreasonable delay by the plaintiff and prejudice to the defendant. Gardner v. Panama R.R. Co., 342 U.S. 29, 31, 72 S.Ct. 12, 13-14, 96 L.Ed. 31 (1951). In the case before us, the district court held that the delay between the filing of plaintiff's charge in 1972 and the filing of the instant suit in 1982 was inexcusable. "The question whether delay is 'inexcusable' on the facts presented is a conclusion of law over which our review is ... plenary." EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 81 (3rd Cir.), cert. dismissed, 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984).
 
 
 8
 Although one circuit has held that a "plaintiff does not have an absolute right to await termination of EEOC proceedings," Jeffries v. Chicago Transit Auth., 770 F.2d 676, 681 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986), the majority of circuits have held that a plaintiff's "failure to file his Title VII claim until completion of the EEOC process [is] not inexcusable delay and cannot support the application of laches." Howard v. Roadway Express, Inc., 726 F.2d 1529, 1533 (11th Cir.1984); see also Holsey v. Armour & Co., 743 F.2d 199, 211 (4th Cir.1984), cert. denied, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); Bernard v. Gulf Oil Co., 596 F.2d 1249, 1256-57 (5th Cir.1979), adopted, 619 F.2d 459, 463 (5th Cir.1980) (en banc), aff'd on other grounds, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); cf. Rozen v. District of Columbia, 702 F.2d 1202, 1204 (D.C.Cir.1983) (failure to secure right to sue letter does not unreasonably delay where plaintiff clearly not "sleeping" on his rights). We believe that the position taken by the majority of the circuits is better reasoned than the position taken by the Seventh Circuit.
 
 As the Supreme Court has noted:
 
 9
 When Congress first enacted Title VII in 1964 it selected "[c]ooperation and voluntary compliance ... as the preferred means for achieving" the goal of equality of employment opportunities. To this end, Congress created the EEOC and established an administrative procedure whereby the EEOC "would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit."
 
 
 10
 Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367-68, 97 S.Ct. 2447, 2454-55, 53 L.Ed.2d 402 (1977) (citation omitted).
 
 
 11
 The legislative history of Title VII reflects this preference for the administrative resolution of claims:
 
 
 12
 It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General, as appropriate.
 
 
 13
 118 Cong.Rec. 7565 (1972). Given that Title VII not only provides an administrative mechanism for the resolution of disputes but also favors the use of the administrative mechanism, it would defeat Title VII's purpose to penalize plaintiffs for relying on the EEOC's performance of its statutory duties. The provision of remedies other than private legal redress would be pointless if plaintiffs risked their chances of redress by taking advantage of the alternative remedies.
 
 
 14
 Furthermore, Congress was not unaware of the delays created by the EEOC's administrative process when it reiterated in 1972 its preference for the administrative resolution of claims. In the course of Congress' 1972 expansion of the EEOC's jurisdiction, it was frequently noted that the Commission already had an approximately two year backlog of cases. H.Rep. No. 92-238, 92nd Cong., 2nd Sess., reprinted in 1972 U.S.Code Cong. & Admin.News 2137, 2147, 2167, 2170-71. Thus, Congress cannot have intended the EEOC's tardiness in addressing complaints to mandate a plaintiff's abandonment of the administrative process.
 
 
 15
 Both the district court and the defendant point to the Ninth Circuit's decision in Boone v. Mechanical Specialties Co., 609 F.2d 956 (9th Cir.1979), to negate the necessary conclusion that plaintiffs may rely on Title VII's administrative remedies without jeopardizing their private legal remedies. However, Boone appears to have been a case where rather than relying on an EEOC process which happened to be slow, the plaintiff intentionally encouraged delays in the EEOC's culmination of his claim. The plaintiff's responsibility for the EEOC's delay in Boone thus made that case the exception to the general rule that laches will not bar a Title VII action. Id. at 960 & n. 3. Indeed, since its decision in Boone, the Ninth Circuit has consistently distinguished Boone from the other Title VII laches cases that have come before it. See Brown v. Continental Can Co., 765 F.2d 810, 815 (9th Cir.1985) ("EEOC delays are not to be charged against private plaintiffs and ... complainants are not required to terminate the administrative process by requesting a notice of right-to-sue"); Gifford v. Atchison, Topeka and Santa Fe Ry. Co., 685 F.2d 1149, 1152 (9th Cir.1982) (ordinarily, private party not charged with EEOC's delay when it retains control over a charge); Bratton v. Bethlehem Steel Corp., 649 F.2d 658, 667 n. 8 (9th Cir.1980) (no presumption that EEOC's delay in issuing right to sue letter is plaintiff's fault).
 
 
 16
 Since we hold that the Guild's reliance on the EEOC's administrative process did not constitute inexcusable delay, we need go no further in order to reverse the district court's finding that the claim was barred by laches. However, we note that defendant's affirmative defense of laches is also barred by the "clean hands" doctrine. Because laches is an equitable defense, this circuit has held that it can be asserted only by a party who comes into equity with clean hands. United States v. Weintraub, 613 F.2d 612, 619 (6th Cir.1979), cert. denied, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). As several courts of appeals have noted, "because a defendant must have notice of pending EEOC action, prejudice is often minimal despite a significant delay before court action is initiated." Bratton, 649 F.2d at 667 n. 8. See also Howard, 726 F.2d at 1533. The Plain Dealer knew in 1972 that a discrimination charge had been filed with the EEOC and that personnel records should be saved. Four years later, the Plain Dealer was given a copy of the charge, and so knew exactly what records and witnesses would be relevant. But the Plain Dealer refused in 1976 and in the following years to cooperate with the EEOC, even when its records were subpoenaed. Thus, the loss of evidence and the delays in this case were substantially created by the Plain Dealer's lack of cooperation with the EEOC process. While the Plain Dealer may have the right to refuse to cooperate with this process, it cannot then fault the Guild for the delays caused by its own stonewalling.
 
 
 17
 Accordingly, we REVERSE the district court's grant of summary judgment to the defendant.
 
 
 18
 ENGEL, Circuit Judge, dissenting.
 
 
 19
 For the reasons stated by United States District Judge Thomas Lambros filed in the district court on January 10, 1986, I must respectfully dissent. I specifically agree with Judge Lambros that in a proper case the doctrine of laches can apply in proceedings such as this, although certainly it should be sparingly used because of the congressional policy favoring resort to the administrative mechanisms in Title VII before commencement of suit. The circumstances here, however, are such that I must agree that not only was the delay inexcusable, but that very little positive good can come from the revival of a case which has been essentially dormant for more than 14 years. It must be remembered that the nature of the charges was withheld from The Plain Dealer for four years at the outset. Further, as I understand the record, the persons originally filing the charge with the EEOC are themselves no longer able to remember precisely the nature of the specific complaint. Given the fact that there undoubtedly has been a great turnover in personnel, and that over the years management and employees generally have gained new insights in the area of sex discrimination, I can only conclude that the revival at this date of these outmoded charges is designed more to achieve some tactical advantage than to advance the legitimate objects of the act. In addition, I understand that the Newspaper Guild had joint committees with The Plain Dealer during this entire period for the purpose of handling problems of sex discrimination, and it does not appear that any repair was ever had to this informal mechanism, which might have been useful had genuine problems arisen.
 
 
 20
 In my view, it would be much better to let the parties commence afresh if any problems of sex discrimination remain in the operation of the company. To try to reconstruct an uncertain and unremembered past record would only add useless baggage which would impede the progress toward the solution of any legitimate claims and increase the administrative costs to both the Guild and the Newspaper.
 
 
 21
 ---------------
 
 
 
 * Opinion Vacated, see 817 F.2d 30.