Mary **BREEN**, Plaintiff,

v.

**NORWEST BANK MINNESOTA, N.A.,**
Sophie Bell Kelley, Jim Gossen,
Mike Casey, Diane Johnson.[1]

Civ. No. 3–93–858.

United States District Court,
D. Minnesota,
Third Division.

July 22, 1994.

1. Individual defendant Jon Pettengill was dismissed with prejudice on April 18, 1994 pursuant to a stipulation among the parties (Doc. No. 18).

Karla R. Wahl, P.A., Minneapolis, MN, for plaintiff.

Linda L. Holstein and William A. Gengler, Schatz Paquin Lockridge Grindal & Holstein, and Kristin Arneson, Sr. Counsel, Norwest Corp. Law Div., Minneapolis, MN, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and Motion to Strike[2] (Doc. No. 7). For the following reasons, Defendants' motion will be granted in part and denied in part.

### BACKGROUND

Plaintiff, Mary Breen, was employed by defendant Norwest Bank Minnesota, N.A. ("Norwest") from May 1988 through December 1992. In April 1991, Breen complained

---

**2.** Defendants have also moved, pursuant to Rule 12(f), to strike Plaintiff's request for punitive damages with respect to Counts V and VI; that motion will be granted.

to Diane Johnson in the Norwest Human Resource Department of sexual harassment and discrimination by her supervisor, Jon Pettengill. Following an investigation into Breen's allegations, Norwest terminated Pettengill's employment effective May 22, 1991.

Breen and Norwest thereafter entered into a settlement agreement and release in connection with the Pettengill incident. Pursuant to the settlement agreement, Norwest agreed to expunge Breen's June 1991 performance evaluation and the probationary status issued as part of that evaluation. Exhibit A to Complaint. The agreement further provided that Breen's new supervisor would conduct a formal evaluation on or before December 31, 1991. Any salary modification resulting from the December 1991 review would apply retroactively to June 1, 1991. *Id.* Finally, the agreement provided that Breen's new supervisor would restore her lending authority no later than September 3, 1991. Norwest also agreed to ensure Breen's eligibility for open positions, to pay Breen's attorney's fees in connection with the incident, and to ensure the confidentiality of the terms and conditions of the settlement agreement. *Id.*

Breen, in turn, agreed to release Norwest, its parent corporation, subsidiaries, officers, directors and employees from every claim of any nature relating to her employment arising on or before July 29, 1991.[3] *Id.*

On September 1, 1991, Norwest hired Mike Casey as Private Banking Manager. Casey replaced Pettengill as Breen's supervisor. Defendants claim that because of the agreed confidentiality of plaintiff's discrimination claims, Breen's file pertaining to the discrimination claims was sealed and inaccessible to Casey. Casey Aff. at ¶ 3.

Breen contends that Defendants breached several terms of the settlement agreement and retaliated against her for exercising her legal rights, namely, reporting the discriminatory conduct of Pettengill. Breen claims, for example, that Norwest failed to restore her lending authority until mid-October 1991

and even at that time did not inform her that such authority had been reinstated. Defendants state that this authority was restored by September 13, 1991. Breen contends that because she was unaware of her renewed lending authority, she constantly sought approval for loans from her supervisor, Mike Casey; subsequently, Casey criticized her for requiring assistance.

Breen also claims that Defendants breached the settlement agreement by failing to timely conduct an evaluation. Defendants claim that Casey was unaware, due to the confidentiality of Breen's settlement agreement, of any deadlines relating to Breen's performance evaluation. Consequently, Casey began his evaluation of Breen's performance on January 29, 1992. Breen received her review on May 1, 1992 rather than the agreed upon deadline of December 31, 1991. Defendants contend that Breen's own failure to provide necessary information to Casey contributed at least in part to the delay. In his evaluation, Casey ranked Breen's performance as a "2", indicating that improvement was needed. Breen objected to the criteria used in the evaluation and challenged the result through STEPS (Steps to Employee Problem Solving), an internal Norwest grievance process. Casey reevaluated Breen's performance using alternative criteria but again ranked Breen's performance as a "2".

Breen claims she was informed that she would be placed on a 180 day probationary period, but because it applied retroactively to January 1, 1992, she actually was given only 60 days to improve her performance. She claims that for the duration of 1992, Defendants continued their retaliatory treatment. In a subsequent performance review on October 15, 1992, Casey again ranked Breen below average and placed her on a 60 day written warning probation. At the end of the sixty day period, Casey again reviewed Breen's performance and found no improvement. Norwest then offered Breen the opportunity to resign but she refused; Norwest terminated Breen on December 22, 1992.

---

**3.** Breen states that the release applied to claims arising after August 16, 1991, the date Breen signed the release. *See* Plaintiff's Memorandum at 2. For purposes of this motion it makes no

difference which date is applied; however, the Court will apply the July 29, 1991 date as that is the date explicitly stated in the release.

On April 16, 1993, Breen filed a charge with the Minnesota Department of Human Rights ("MDHR"). In her charge, Breen alleged breach of her settlement agreement and retaliation for her prior complaints of sexual harassment. Exhibit A to Holstein Affidavit. On October 21, 1993, after investigation, the MDHR dismissed Breen's charge and notified her that she had 45 days to commence a civil action. On December 20, 1993, Breen filed suit against Norwest Bank and several individual defendants, all employees of Norwest, alleging violations of Title VII of the Civil Rights Act of 1964 and of the Minnesota Human Rights Act ("MHRA"), breach of contract and breach of a covenant of good faith and fair dealing.

Breen concedes that she failed to timely file a charge with the Equal Employment Opportunity Commission ("EEOC"), a prerequisite to commencing a civil action under Title VII.[4] Breen contends, however, that her delay in filing is the fault of the MDHR, which admittedly neglected to automatically cross-file Breen's charge as part of its standard procedure. Exhibit A to Wahl Aff.

## DISCUSSION

### I. TITLE VII OF THE CIVIL RIGHTS ACT

As a prerequisite to commencing a civil action under Title VII in federal court, a person who initially instituted proceedings with a state agency must file a charge with the EEOC within 300 days after the allegedly unlawful employment practice occurred, or within thirty days after receiving notice that the state agency has terminated its proceedings, whichever is earlier. 42 U.S.C. § 2000e–5(e). If after 180 days of filing the charge, the EEOC does not commence a civil action, the person may obtain from the EEOC a "right to sue" letter and commence a civil action within ninety days of receipt of that letter. 42 U.S.C. § 2000e–5(f)(1).

### A. Count I

In Count I Breen alleges that Norwest as the employer of Jon Pettengill "intentionally and deliberately sexually harassed and discriminated against Plaintiff in violation of 42 U.S.C. § 2000(e)."

■ Breen concedes that no charge was filed with the EEOC before commencement of this action, but argues that because the MDHR admittedly erred in failing to automatically cross-file the charge with the EEOC, see Minn.Rule 5000.0400 Subp. 2a, the limitations period should be tolled.

Even were the Court to toll the limitations period from the date Breen filed the MDHR charge,[5] the events alleged in Count I occurred far more than 300 days prior to Breen's filing of a charge with the MDHR. Count I alleges sexual harassment and discrimination by Norwest *as the employer of Jon Pettengill*. Because Norwest terminated Pettengill on May 22, 1991, however, any discriminatory conduct on the part of Norwest in its role as Pettengill's employer necessarily ended on that date. Breen filed her charge with the MDHR on April 16, 1993, nearly two years later. Thus, even were Breen's failure to file a charge with the EEOC excused after April 16, 1993, the limitations period had nonetheless expired by that date.

■ In addition to missing the filing deadline, Breen released Norwest from all claims arising out of her employment, including claims under Title VII, arising on or before July 29, 1991. Absent allegations of fraud or duress, a clear and unambiguous release of claims against a party bars a plaintiff from bringing a subsequent action based on the same facts as underlie the settled claims. *Pilon v. University of Minnesota,* 710 F.2d 466, 468 (8th Cir.1983). The principles of release and waiver apply to Title VII claims. *Id.* Even where the plaintiff alleges a breach of the underlying settlement agreement, the plaintiff's exclusive remedy is for breach of contract; she is precluded from

---

4. Breen filed a charge with the EEOC subsequent to commencing this action and received notice of the right to sue on April 8, 1994.

5. The Court will address the equitable tolling issue in conjunction with Count III. *See infra* section I.B.

reviving the underlying claims. *Sherman v. Standard Rate Data Service, Inc.,* 709 F.Supp. 1433, 1438 (N.D.Ill.1989).

Because the alleged sexual harassment by Norwest as Pettengill's employer necessarily ended on May 22, 1991, Pettengill's termination date, the conduct falls within the time period in which Breen released all claims. Breen alleges no fraud, duress or lack of consideration by Norwest in procuring the release. Thus, as Breen released the claims alleged in Count I she is precluded from now attempting to revive them.[6]

### B. Count III

In Count III Breen alleges that Norwest and the individual defendants violated section 2000e by discriminating and retaliating against her for exercising her legal rights. Defendants argue that Count III must be dismissed because Breen failed to timely file a charge with the EEOC. Defendants also argue that Title VII does not apply to the individual defendants, thus warranting dismissal of Count III as to Sophie Bell Kelley, Jim Gossen, Mike Casey and Diane Johnson.

■ First, with respect to the individual defendants, Title VII does not impose individual liability on employees. *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied* — U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994). Rather, Title VII governs only employers with fifteen or more employees. 42 U.S.C. § 2000e(b). Because Breen does not dispute the status of Sophie Bell Kelley, Jim Gossen, Mike Casey and Diane Johnson as employees within the meaning of the statute, the individual defendants will be dismissed under Count III.

Applying December 22, 1992, Breen's termination date, as the last occurrence of Norwest's allegedly discriminatory conduct, the 300 day deadline for filing with the EEOC would expire on October 18, 1993. The alternative deadline—thirty days subsequent to the MDHR's dismissal of Breen's charge—would expire no later than November 25, 1993. Therefore, the earlier date of October 18, 1993 applies as the deadline for filing an EEOC charge. *See* 42 U.S.C. § 2000e. Breen did not file a charge with the EEOC until April 8, 1994, almost six months past the deadline and after commencement of this action.

■ Breen argues that because the MDHR erred by failing to automatically cross-file her charge, the limitations period should be tolled from the date Breen filed with the MDHR.

The Supreme Court has held that Title VII filing requirements are not jurisdictional prerequisites to commencing suit in federal court but, like statutes of limitations, may be tolled when equity so requires. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Walker v. St. Anthony's Medical Center,* 881 F.2d 554, 557 (8th Cir.1989). Whether delay in filing is excusable depends upon the circumstances of each case and lies within the sound discretion of the district court. *Hukkanen v. Intern. Union of Operating Engineers,* 3 F.3d 281, 286 (8th Cir. 1993).

In support of her argument for equitable tolling, Breen relies on *Kyllo v. Farmers Coop. Co. of Wanamingo, Minn.,* 723 F.Supp. 1332 (D.Minn.1989). In *Kyllo,* the MDHR inexplicably failed to rule for four years on a pro se plaintiff's reconsideration request of its finding of no probable cause. When the MDHR finally ruled on the reconsideration request and dismissed the charges, the plaintiff obtained a right to sue letter from the EEOC and commenced her civil action. The defendant argued that the plaintiff's action was time-barred; the plaintiff argued that the limitations period should be tolled because failure of the MDHR to rule caused the delay. The court agreed with the plaintiff. Central to the court's decision were its findings that the MDHR had instructed the plaintiff, who was not represented by counsel, not to file suit during the pendency of her request, and that during the interim the plaintiff "persistently questioned the MDHR about the reasons for the lengthy

---

**6.** Dismissal of Count I is also warranted under the "scope of the charge" doctrine. *See* Defendant's Memorandum at 7–8. It is unnecessary, however, to address this alternative basis for dismissal.

delay." *Id.* at 1335. Under the circumstances, the court found, the delay of the MDHR should not bar the plaintiff's action. *Id.*

*Kyllo* is distinguishable from the present case in two important respects: Kyllo was a pro se plaintiff and she persistently attempted to monitor the progress of her claim. Breen, in contrast, fails to allege even a single attempt by her or on her behalf to check on the status of her claim or to confirm that the MDHR actually cross-filed a charge with the EEOC; rather, Breen relied completely on the MDHR. Unlike Kyllo, who was instructed by the MDHR not to commence a civil action pending its ruling on her request, Breen does not claim that either the MDHR or the EEOC mislead her. Moreover, during the entire period at issue Breen was represented by counsel.

Courts addressing untimely Title VII filings place substantial weight on whether a plaintiff did everything within her control to ensure the processing of her discrimination claim. For example, in *Gifford v. Atchison, Topeka and Santa Fe Ry. Co.*, 685 F.2d 1149 (9th Cir.1982), a case upon which Breen also relies, the court denied the defendant summary judgment on the theory of laches where the EEOC failed to issue a right to sue letter for ten years after the plaintiff filed her charge. During that time the plaintiff made "repeated and continuous efforts ... to monitor the progress of her charge through the EEOC." *Id.* at 1152. The EEOC represented to the plaintiff and her attorneys that it had found reasonable cause to conclude that plaintiff had been discriminated against and that it intended to file suit on the plaintiff's behalf. Because the plaintiff had no control over her claim despite persistent efforts to ensure its progression, the court declined to dismiss the claim on the ground of laches. *Id.*

In *Hukkanen v. Intern. Union of Operating Engineers*, another case involving a failure by the plaintiff to request a right to sue letter within 180 days of filing her charge with the EEOC, the court stated, "[p]laintiffs have some obligation to monitor the progress of their charges with the EEOC and do not have an absolute right to wait until the EEOC proceedings conclude." *Hukkanen*, 3 F.3d 281 (8th Cir.1993). *See also Whitfield v. Anheuser–Busch*, 820 F.2d 243, 245 (8th Cir.1987) (court found filing delay unexcused where plaintiff knew of deadlines but made no effort to check on status of charge). This obligation on a Title VII plaintiff to attempt to monitor her charge applies equally to the plaintiff here to confirm the filing of the charge with the EEOC. After filing a charge with the MDHR, Breen could have filed an independent charge with the EEOC or, at the very least, confirmed that the MDHR had cross-filed the charge on her behalf. Breen's lack of effort is even less excusable as she was represented by counsel the entire time. *See Keyse v. Calif. TX Oil Corp.*, 590 F.2d 45, 47 (2nd Cir.1978) (tolling statutory filing period improper where plaintiff was represented by counsel during that period, even where plaintiff attributes the delay to misinformation by the EEOC and her own counsel).

Because Breen made no effort to confirm the filing of her charge with the EEOC or monitor its progress, the Court will not excuse her failure to meet the requisite filing requirements. Therefore, Count III of Breen's complaint alleging a violation of Title VII will be dismissed.

## II. MINNESOTA HUMAN RIGHTS ACT [7]

### A. Count II

Breen alleges in Count II the same facts which underlie Count I, to wit, that Norwest, with Jon Pettengill, sexually harassed and discriminated against Breen in violation of the Minnesota Human Rights Act, Minnesota Statute section 363.03. The defects fatal to Count I prove equally fatal to Count II.

 First, Breen missed the requisite deadlines in filing both the charge with the MDHR and the civil action. Under the MHRA, a plaintiff must file a charge within

---

7. Pursuant to 28 U.S.C. § 1367, the Court will exercise its supplemental jurisdiction over the state law claims asserted in the Complaint not withstanding its dismissal of all claims over which it has original jurisdiction.

one year after the occurrence of the allegedly discriminatory practice. Minn.Stat. § 363.06 Subd. 3. As stated above, any discriminatory conduct by Norwest relating to the conduct of Pettengill necessarily ended by May 22, 1991, the date of Pettengill's termination. Breen filed her charge with the MDHR on April 16, 1993, well past the 365 day deadline.

Furthermore, the MHRA requires a plaintiff to commence a civil action "within 45 days after receipt of notice that the commissioner has dismissed a charge." Minn.Stat. § 363.14 Subd. 1(a)(1). On October 21, 1993, the Commissioner of the MDHR dismissed Breen's charge. *See* Exhibit B to Holstein Aff. Assuming Breen received notice of the dismissal no later than October 26, 1993,[8] Breen was required to commence her civil action by December 10, 1993. She did not file her complaint, however, until December 20, 1993. Breen offers no explanation for her late filing. Because both the MDHR charge and the civil action were untimely filed, Count II will be dismissed.[9]

### B. Count IV

In Count IV Breen alleges retaliation by Norwest in violation of the MHRA. Although, with regard to these allegations, Breen satisfied the one year deadline for filing a charge with the MDHR, Breen failed to commence her civil action within 45 days of the MDHR's dismissal of her action. *See supra* section II.A. Therefore, Count IV also will be dismissed.

## III. STATE COMMON LAW CLAIMS

### A. Breach of Contract

In Count V Breen alleges breach of contract by Norwest and the individual defendants for failure to meet their obligations under the settlement agreement.

Defendants move to dismiss Breen's breach of contract claim against the individual defendants on the ground that they were not parties to the contract, and against Nor-

west on the ground of substantial performance. Norwest claims that the only defects in its performance of the settlement agreement were failing to restore Breen's lending authority by September 3, 1991 and failing to evaluate Breen on or before December 31, 1991. Norwest claims that Breen's lending authority was restored only about ten days late. Norwest attempts to explain the delay in Breen's evaluation and attributes part of the delay to Breen herself. Norwest argues that neither of these minor deficiencies in performance supports a breach of contract claim.

Breen disputes the importance of the deficiencies and the dates of Norwest's performance. For example, Breen contends that Norwest did not officially restore her lending authority until mid-October 1991 and that even then Norwest failed to inform Breen that she had regained her authority. Breen claims that Norwest's breach of this provision reflected negatively in her performance as it required her continually to seek approval from her supervisor for loans and overdrafts. Breen also disputes the reasons for the delayed performance evaluation, the fairness of that evaluation and the subsequent length of time she was given to improve her performance.

With respect to the individual defendants, the Court holds that because they were not parties to the agreement, *see* Exhibit A to Complaint, the breach of contract claim will be dismissed against Sophie Bell Kelly, Jim Gossen, Mike Casey and Diane Johnson. With respect to Norwest, the Court finds that Breen raises genuine issues of material fact which preclude summary judgment on the breach of contract claim; thus, Norwest's motion for summary judgment on Count V will be denied.

### B. Breach of Covenant of Good Faith and Fair Dealing

Breen alleges in Count VI that Defendants breached an express or implied cov-

---

8. Breen does not allege that she failed to receive notice of the MDHR's Dismissal by this date. Breen's argument regarding tolling during a dispute resolution process, *see* Plaintiff's Memo. at 14–15, is not applicable to this case.

9. Both the release of claims and the "scope of the charge" doctrine, discussed *supra* in connection with Count I, provide alternative grounds for dismissal of Count II.

enant of good faith and fair dealing created by Defendants' "personnel policies, retirement plans and employee guidelines, [which represented] that employees would be treated fairly and equitably." Complaint ¶ 50.

Minnesota courts do not recognize an implied-in-law covenant of good faith and fair dealing in the employment relationship. *Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853, 858 (Minn. 1986). General statements of policy and promises of permanent employment neither alter an at-will employment contract nor create a covenant of good faith and fair dealing. *Id.* at 858.

Count VI of Breen's complaint alleges precisely the type of implied covenant of good faith which is not recognized under Minnesota law. Although a good faith covenant may be bargained for and agreed upon, *Simonson v. Meader Distribution Co.*, 413 N.W.2d 146, 148 (Minn.Ct.App.1987), Breen alleges no facts which meet the contractual requirements of an offer. Summary judgment is appropriate where, accepting the plaintiff's rendition of the facts as true, the plaintiff cannot establish a modification of the at-will employment relationship. *Id.* Therefore, Breen's claim for breach of a covenant of good faith and fair dealing will be dismissed as a matter of law.

## IV. PUNITIVE DAMAGES

 Breen's punitive damages claims in Counts V and VI will be stricken; she has not complied with the provision of Minn.Stat. § 549.191. This order will not preclude Breen from seeking leave of the Court to amend Count V and add a claim for punitive damages. However, punitive damages are not recoverable in actions for breach of contract except in exceptional circumstances, none of which appear to be present in this case.

### CONCLUSION

Based on the foregoing and all the files, records and proceedings herein, the Court hereby **ORDERS THAT:**

1. Counts I–IV and VI are **DISMISSED WITH PREJUDICE;**

2. Count V is **DISMISSED WITH PREJUDICE AS TO THE INDIVIDUAL DEFENDANTS;**

3. Norwest's Motion for Summary Judgment with respect to Count V is **DENIED;** and

4. Norwest's Motion to Strike Plaintiff's Request for Punitive Damages is **GRANTED.**