U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

GLOBAL HORIZONS, INC., d/b/a Global Horizons Manpower, Inc.; Captain Cook Coffee Company Ltd.; Del Monte Fresh Produce (Hawaii), Inc.; Kauai Coffee Company, Inc.; Kelena Farms, Inc.; Mac Farms of Hawaii,

LLC n/k/a MF Nut Co., LLC; Maui Pineapple Company, Ltd. a/k/a Maui Pineapple Farms; Alexander & Baldwin, Inc.; Massimo Zanetti Beverage USA, Inc.; and Does 1–15, Inclusive, Defendants.

CV. No. 11–00257 DAE–RLP.

United States District Court, D. Hawai'i.

Nov. 8, 2012.

Anna Y. Park, Elizabeth Esparza–Cervantes, Sue J. Noh, Derek W. Li, Lorena Garcia–Bautista, U.S. Equal Employment Opportunity Commission, Los Angeles, CA, Attorney(s) for Plaintiff(s).

Michael Jay Green, Honolulu, HI, Javier Lopez–Perez, Los Angeles, CA, Attorneys for Defendant Global Horizons, Inc.

Christie L. Kriegsfeld, Kristin R. Culbertson, Mark Ogden, Littler Mendelson, P.C., Phoenix, AZ, David W.H. Chee, Tom, Quitiquit, Chee, Watts & Yamamoto, LLP, Honolulu, HI, for Defendant Del Monte Fresh Produce (Hawaii).

Christopher J. DeGroff, Gerald L. Maatman, Jr., Laura J. Maechtlen, Seyfarth Shaw, LLP, Chicago, IL, Mark J. Bennett, Richard John Wallsgrove, Starn, O'Toole, Marcus & Fisher, Honolulu, HI, Robb D. McFadden, Robert Brian Wong, Seyfarth, Shaw, LLP, San Francisco, CA, for Defendants Kauai Coffee Company, Inc., Alexander & Baldwin, Inc., and Massimo Zanetti Beverage USA, Inc.

Dax B. Deason, Deason Law Group, P.C., Houston, Jim Darnell, El Paso, TX, Sarah O. Wang, Jennifer C.T. Woo, Marr, Jones & Wang, LLP, Honolulu, HI, for Defendant Kelena Farms, Inc.

Barbara A. Petrus, Anne T. Horiuchi, Carolyn K. Wong, Goodsill, Anderson, Quinn & Stifel, LLP, Honolulu, HI, for Defendant Mac Farms of Hawaii, LLC.

Christopher S. Yeh, Darin Robinson Leong, Marr, Jones & Wang, LLP, Sean K. Sanada, Hawaii Medical Service Association, Honolulu, HI, for Defendant Maui Pineapple Company, Ltd.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT AND SUBSTANTIVE JOINDERS THERETO

DAVID ALAN EZRA, District Judge.

On October 26, 2012, the Court heard Defendant Global's Motion to Dismiss and the Substantive Joinders thereto. Sue J. Noh, Esq., appeared on behalf of Equal Employment Opportunity Commission ("Plaintiff" or "EEOC"); Javier Lopez–Perez, Esq., appeared on behalf of Defendant Global Horizons, Inc. ("Global"); David W.H. Chee, Esq., appeared on behalf of Defendant Del Monte Fresh Produce (Hawaii), Inc. ("Del Monte"); Jennifer C.T. Woo, Esq., appeared on behalf of Defendant Kelena Farms, Inc. ("Kelena Farms"); Barbara A. Petrus, Esq., and Anne T. Horiuchi, Esq., appeared on behalf of Defendant Mac Farms of Hawaii, LLC ("Mac Farms"); and Christopher S. Yeh, Esq., appeared on behalf of Maui Pineapple Company, Ltd. ("Maui Pineapple"). Additionally, Kristin R. Culbertson, Esq., made a special appearance by telephone on behalf of Defendant Del Monte and Laura J. Maechtlen, Esq., made a special appearance by telephone on behalf of Defendants Kauai Coffee Company, Inc. ("Kauai Coffee"), Alexander & Baldwin, Inc. ("A & B"), and Massimo Zanetti Beverage USA, Inc. ("MZB"). After reviewing the Motion, the Substantive Joinders, and the supporting and opposing memoranda, the Court **GRANTS IN PART** and **DENIES IN PART** Global's Motion to

Dismiss and the Substantive Joinders thereto.

## BACKGROUND

### I. Factual Allegations

On April 19, 2011, EEOC filed the instant action for recovery pursuant to Title VII of the Civil Rights Act of 1964 and Title 1 of the Civil Rights Act of 1991 to correct allegedly unlawful employment practices on the basis of national origin, race, and retaliation. Plaintiff claims that Defendants engaged in discrimination and a pattern or practice of discrimination when they subjected Marut Kongpia, Nookrai Matwiset, Jakarin Phookhiew, Mongkol Bootpasa, Janporn Suradanai, Suthat Promnonsri, Itthi Oa–Sot, and a class of similarly situated Thai and other Asian individuals (collectively, "Claimants") to harassment, disparate treatment, retaliation, and constructive discharge on the basis of the Claimants' national origin and race. (*See* "TAC," Doc. # 263.)

The Third Amended Complaint ("TAC") alleges that Defendant Global recruited foreign nationals under the U.S. Department of Labor H2–A guest worker program to work at farms in the United States, including farms owned by Defendants Captain Cook, Del Monte, Kauai Coffee, Kelena Farms, Mac Farms, Maui Pineapple, and A & B (collectively, "Farm Defendants"). Plaintiff alleges that Global used recruiters in Thailand to recruit Thai workers, and required them to pay substantial recruitment fees to be employed by Global. (*Id.* ¶ 105.) Plaintiff further alleges that Global knew that the Claimants were impoverished and would have to borrow money, pledging family land as collateral, in order to pay the recruitment fees. (*Id.*) Global allegedly "harassed and intimidated the Claimants on a regular basis" and "regularly threatened the Claimants with deportation, arrest, sus-

pension, and/or physical violence." (*Id.* ¶¶ 108–109.) According to Plaintiff, Global "unlawfully confiscated the Claimants' identification documents" and "subjected the Claimants to uninhabitable housing; insufficient food and kitchen facilities; inadequate pay; significant gaps in work; visa and labor certification violations; suspension, deportation and/or physical violence." (*Id.* ¶ 111.) These "intolerable working conditions ... resulted in constructive discharge." (*Id.* ¶ 114.) Plaintiff claims that these conditions created a hostile work environment and that the Claimants were subject to these conditions because of their national origin and race. (*Id.* ¶¶ 625, 646.) Plaintiff also alleges that when Claimants complained of the unlawful employment practices, Global subjected them to "adverse employment actions including without limitation, discipline, transfers, denial of work, threats, harassment, denial of transportation and food, and a hostile work environment." (*Id.* ¶ 678.) As a result of this alleged misconduct, Plaintiff claims that Global violated Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e–2(a), 2000e–3. (*Id.* ¶¶ 625, 646, 663, 677.)

With respect to the Farm Defendants, Plaintiff alleges that each of them are joint employers with Global and jointly controlled the terms and conditions of employment of the Claimants. (*Id.* ¶¶ 7–61.) Plaintiff further alleges that each of them knew or should have known about Global's alleged misconduct and/or engaged in their own discriminatory misconduct toward the Claimants. (*Id.* ¶¶ 7–61, 132–621.) Additionally, with respect to Defendant MZB, Plaintiff alleges that it is liable as a successor to A & B and/or Kauai Coffee. (*Id.* ¶ 67.)

### II. Procedural History

On April 19, 2011, Plaintiff filed its initial Complaint. (Doc. # 1.) On July 15,

2011, Plaintiff filed its First Amended Complaint. (Doc. # 12.) Between July 19, 2011 and September 19, 2011, each Farm Defendant filed a Motion to Dismiss the First Amended Complaint. (Docs. ## 20, 22, 29, 39, 46, 48.) On October 21, 2011, the EEOC filed a Motion to Stay this action pending the conclusion of the criminal proceedings involving employees of Defendant Global. (Doc. # 109.) The Motion to Stay was opposed by the Farm Defendants. (Docs. ## 111, 112, 113–116.) On November 2, 2011, 2011 WL 5325747, the Court issued an Order granting a stay with respect to Defendant Global and denying a stay with respect to the Farm Defendants. (Doc. # 124.) The Court also dismissed the First Amended Complaint Without Prejudice as to the Moving Defendants. (Doc. # 124.)

On December 16, 2011, Plaintiff filed a Second Amended Complaint ("SAC"). (Doc. # 128.) Defendants Captain Cook, Kauai Coffee, Maui Pineapple, Mac Farms, Del Monte, Kelena Farms, A & B, and MZB each filed a Motion to Dismiss the SAC. (Docs. ## 138, 141, 145, 146, 152, 153, 154, 155.) On March 16, 2012, after full briefing and a hearing, the Court issued an Order: (1) granting the motions to dismiss as to all of the claims against Defendant A & B and the retaliation claims against Defendants Mac Farms, Kelena Farms, Del Monte, Maui Pineapple, Kauai Coffee, A & B, and MZB, (2) denying the motions to dismiss as to the balance of Plaintiff's claims, and (3) granting Plaintiff leave to amend.

On March 30, 2012, Del Monte and Kelena Farms each filed a Motion for Reconsideration of this Court's March 16, 2012 Order. (Docs. ## 238, 239.) Defendants Mac Farms, Captain Cook, and Maui Pineapple subsequently filed Substantive Joinders in Del Monte's Motion for Reconsideration. (Docs. ## 242, 243, 245.) On

April 12, 2012, Plaintiff filed an Opposition to both Motions for Reconsideration and each of the three Substantive Joinders. (Docs. ## 247–251.) On April 26, 2012, Del Monte and Kelena Farms filed a Reply in further support of their respective Motions. (Docs. ## 257, 260.) That same day, Mac Farms and Captain Cook each filed a Reply in further support of their respective Joinders. (Docs. ## 258, 259.) On May 31, 2012, the Court issued an Order: (1) denying Del Monte's Motion for Reconsideration and the Substantive Joinders thereto, (2) granting in part and denying in part Kelena Farms' Motion for Reconsideration, and (3) dismissing without prejudice the Plaintiff's constructive discharge claim against Kelena Farms. (Doc. # 261.)

On July 2, 2012, Plaintiff filed a Third Amended Complaint. On August 1, 2012, Defendants Kauai Coffee, A & B, MZB, Captain Cook, Mac Farms, Del Monte, Maui Pineapple, and Kelena Farms each filed a Motion to Dismiss the TAC. (Docs. ## 269, 272, 277, 285–289.) On August 8, 2012, Defendants Captain Cook, Maui Pineapple, and Kelena Farms filed Substantive Joinders in Kauai Coffee, A & B, and Mac Farms' Motions to Dismiss. (Docs. ## 296–298.) On August 27, 2012, Plaintiff filed an Opposition to each of the Defendants' Motions to Dismiss and to each of the three Substantive Joinders. (Docs. ## 314–324.) On August 31, 2012, each Moving Defendant filed a Reply in further support of their respective Motions (Docs. ## 355–357, 359, 361, 363, 364, 367), and Captain Cook, Kelena Farms, and Maui Pineapple each filed a Reply in further support of their respective Joinders (Docs. ## 362, 365, 366). On October 9, 2012, the Court issued an Order granting in part and denying in part Defendants' Motions to Dismiss and the Substantive Joinders thereto. (Doc. # 389.)

Defendant Global's first appearance in these proceedings occurred on July 31, 2012, when Global's counsel filed a Motion to appear Pro Hac Vice. (Doc. # 281.) On August 1, 2012, Defendant Global filed a Motion for Extension of Time to File a Responsive Pleading to the TAC. (Doc. # 291.) On August 20, 2012, the Court issued an Order vacating the stay with respect to Defendant Global (Doc. # 312), and on August 30, 2012 the Court granted Global's Motion for Extension of Time (Doc. # 354). On September 10, 2012, Defendant Global filed a second Motion for Extension of Time. (Doc. # 368.) On that same day, the Court granted the second extension, and directed Defendant Global to file its responsive pleading no later than September 18, 2012. (Doc. # 369.) On September 18, 2012, Global filed a Motion to Dismiss the TAC. ("Global Mot.," Doc. # 371.) On September 25, 2012, Defendants Kauai Coffee, A & B, MZB, Mac Farms, Maui Pineapple, and Kelena Farms filed Substantive Joinders in Global's Motion to Dismiss. (Docs. ## 375–378.) On October 26, 2012, Plaintiff filed an Opposition to Global's Motion to Dismiss and to each of the Substantive Joinders. (Docs. ## 381–385.) On October 12, 2012, Defendants Kauai Coffee, A & B, MZB, Mac Farms, Maui Pineapple, and Kelena Farms each filed a Reply in further support of their respective Joinders. (Docs. ## 390–393.) Defendant Global has not filed a Reply in support of its Motion to Dismiss.

### STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Review is limited to the contents of the complaint. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). A complaint may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal claim." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984) (citation omitted). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir. 2005).

[4] A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. *See id.* at 556–57, 127 S.Ct. 1955; *see also McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.") (citation omitted). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citations omitted). Thus, "bare assertions amounting to nothing more than a formulaic recitation of the elements" of a claim "are not entitled to an assumption of truth." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir.2009) ("[T]he non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.")(internal quotation marks and citation omitted).

■ A court looks at whether the facts in the complaint sufficiently state a "plausible" ground for relief. *See Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. A plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence and may not just provide a speculation of a right to relief. *Id.* at 586, 127 S.Ct. 1955. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558, 127 S.Ct. 1955 (citation omitted). If a court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" (internal quotations and citations omitted)).

## DISCUSSION

### I. *Failure to State a Claim*

The TAC alleges the following causes of action against Defendant Global:

- *Count One:* Pattern or Practice of Discriminatory Treatment Because of National Origin, Race, Retaliation, and/or Constructive Discharge (TAC ¶¶ 622–644);

- *Count Two:* Hostile Work Environment/Harassment (*id.* ¶¶ 645–661);

- *Count Three:* Discriminatory Terms and Conditions of Employment (*id.* ¶¶ 662–675);

- *Count Four:* Retaliation for Engaging in Protected Activity (*id.* ¶¶ 676–696).

The causes of action are based on allegations that Global, as a joint employer with each of the Farm Defendants, engaged in unlawful employment practices in violation of Title VII. Global moves to dismiss the TAC on the ground that the EEOC has failed to state a claim for relief under Title VII.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") prohibits employers from discriminating against an employee based on race, color, religion, sex, or national origin. *Id.* § 2000e–2(a). Title VII also makes it unlawful for an employer to retaliate against an employee because he has taken an action to enforce his rights under Title VII. *Id.* § 2000e–3(a). The EEOC may assert claims pursuant to §§ 706 and 707 of Title VII, 42 U.S.C. §§ 2000e–5 and 2000e–6. Section 706 allows the EEOC to sue on behalf of one or more "persons aggrieved" by an unlawful employment practice. 42 U.S.C. § 2000e–5(f). Section 707 allows the EEOC to investigate and act on a charge of a pattern or practice of discrimination. *See id.* § 2000e–6.

■ As a preliminary matter, the Court disagrees with Defendant Global's conclusion that the EEOC's allegations relating to Global's recruiting practices are irrelevant to the causes of action upon which the TAC is predicated. (Global Mot. at 10.) In a Title VII case, the plaintiff bears the burden of establishing a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "To establish a prima facie case, a plaintiff must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir. 1998) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Allegations that Global's employees sought out impoverished Thai nationals with limited English skills because uneducated non-English speakers, particularly from Thailand, were less likely to run away, "ask too many questions," or "cause trouble," give rise to

an inference of unlawful discrimination and are therefore relevant to the EEOC's causes of action. (TAC ¶¶ 103, 104.)

### a. Count One: Pattern or Practice of Discriminatory Treatment

■ In order to establish a pattern or practice of discriminatory treatment in violation of Title VII, a plaintiff must show " 'more than the mere occurrence of isolated or accidental or sporadic discriminatory acts.' " *Obrey v. Johnson*, 400 F.3d 691, 694 (9th Cir.2005) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Plaintiff must show that the discrimination was the defendant's " 'standard operating procedure—the regular rather than the unusual practice.' " *Id.* (quoting *Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843).

■ The Court concludes that the EEOC has alleged sufficient facts to plausibly suggest that Defendant Global engaged in a pattern or practice of discriminatory treatment toward the Claimants on account of their race and/or national origin. As set forth below, this alleged discriminatory treatment includes the creation of a hostile work environment by means of harassment, intimidation, and abusive conduct; the imposition of discriminatory terms and conditions of employment; and retaliation for engaging in protected activity. That the alleged violations were ongoing and repeated rather than isolated or sporadic allows the Court to reasonably infer that discriminatory treatment was Global's "standard operating procedure."

### b. Count Two: Hostile Work Environment and Constructive Discharge

■ Title VII "guarantees employees 'the right to work in an environment free from discriminatory intimidation, ridicule, and insult.' " *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir.2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In order to prevail on a hostile work environment claim, a plaintiff is "required to establish 'a pattern of ongoing and persistent harassment severe enough to alter the conditions of employment.' " *Dawson v. Entek Int'l*, 630 F.3d 928, 939 (9th Cir.2011) (quoting *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir.1998)). To satisfy this requirement, a plaintiff must establish that "the conduct at issue was both objectively and subjectively offensive: he must show that a reasonable person would find the work environment to be 'hostile or abusive,' and that he in fact did perceive it to be so." *Dawson*, 630 F.3d at 938 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *see also EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 998–99 (9th Cir.2010). In assessing whether certain conduct is objectively hostile, the Court must examine the totality of circumstances and determine whether a reasonable person would perceive the workplace as hostile. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir.2007) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ An employer may also be held liable under Title VII for constructive discharge. *Penn. State Police v. Suders*, 542 U.S. 129, 143, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). To state a claim for constructive discharge under Title VII, a plaintiff must show that "the working conditions [had] become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Id.* at 141, 124 S.Ct. 2342; *see also Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir.1987) ("A constructive discharge occurs when, looking at the totality of cir-

cumstances, 'a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions.' ") (quoting *Satterwhite v. Smith*, 744 F.2d 1380, 1381 (9th Cir.1984)). In order to state a claim for constructive discharge, the plaintiff must also allege that the employee did in fact resign. *See Hubbard v. Bimbo Bakeries USA, Inc.*, 270 Fed.Appx. 607, 609 (9th Cir.2008) (noting that the elements of a constructive discharge claim include the intuitive "element that requires the plaintiff to have actually quit").

■ The Court concludes that the EEOC has alleged sufficient facts to state a claim based on hostile work environment against Defendant Global. Global's contention that the TAC contains "no factual basis" for a claim of hostile work environment is baffling. (Global Mot. at 13.) The TAC contains a plethora of allegations of harassment, intimidation, and hostile and abusive conduct by Global employees, including the following: that Global Operations Manager Bruce Schwartz ("Schwartz"), Vice–President of Operations Joseph Knoller ("Knoller"), and Director of International Relations Tubchumpol told Claimants that they could not leave the apartment where they were living, and had guards prevent them from doing so (TAC ¶ 119); that Knoller told Claimants "he did not want anyone escaping," and "a worker who previously escaped had been

shot" (TAC ¶ 126); that Knoller slapped Claimant AH and threatened to send him home for allegedly encouraging other Claimants to run away (TAC ¶ 127); that Mordechai Orian ("Orian"), Global's Chief Executive Officer, and Knoller directed manager Shane Germann ("Germann") and supervisor Sam Wongsesanit ("Wongsesanit") to secure the perimeters at the Maui Pineapple compound to prevent Claimants from running away (TAC ¶ 130); that Tubchumpol told Claimant BD she would let another Claimant "die here on one of these islands" and would "never let him go or transfer anywhere," because he tried to retain his visa information (TAC ¶ 549); and that Wongsesanit hit one of the Claimants with a stick to make him work faster (TAC ¶ 487). These factual allegations are sufficient to state a claim based on hostile work environment.

■ Defendant Global also takes the position that it was not aware of any alleged harassment or conduct giving rise to a claim of hostile work environment, and therefore cannot be held liable for such conduct. (Global Mot. at 13–14.) Global's belief that ignorance shields an employer from liability in this context is incorrect. Because the TAC alleges that a hostile work environment was created by Claimants' supervisors, Global is vicariously liable regardless of whether it knew about the alleged misconduct.[1] *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864,

1. Liability in this context is subject to an affirmative defense, which an employer can establish by proving that (1) no "tangible employment action" was taken; (2) it "exercised reasonable care to prevent and correct promptly" the conduct at issue; and (3) "the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities." *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir.1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). However, dismissal of Plaintiff's hostile work envi-

ronment claim on the basis of an affirmative defense is not appropriate in this case. Global has not established the elements of the defense, and in any event, a motion to dismiss cannot be granted on the basis of an affirmative defense unless no relevant facts are in dispute. *See, e.g., Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss ... but this is not true when, as here, the defense raises no dispute issues of fact.") (internal citation omitted).

877 (9th Cir.2001) ("In general, an employer is vicariously liable for a hostile environment created by a supervisor."); *Burrell v. Star Nursery, Inc.,* 170 F.3d 951, 956 (9th Cir.1999) (citing to *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 764, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)) ("[T]he . . . rule focuses on whether the harasser has immediate or successively higher authority over the victim of the harassment, not on whether the employer knew about the harassment. . . . [I]f the harassment is actionable and the harasser has supervisory authority over the victim, we presume that the employer is vicariously liable for the harassment.")(internal citation omitted).

■ The Court concludes that the EEOC has alleged sufficient facts to state a claim based on constructive discharge. The facts alleged indicate that the unlawful employment practices Claimants were subjected to by Global supervisors were sufficiently intolerable such that a reasonable person would have felt compelled to resign. Furthermore, the TAC alleges that Claimants did, in fact, resign. (*See, e.g.,* TAC ¶ 414 ("Tubchumpol notified Mordechai Orian via email about numerous escapes from Del Monte and other farms.").)

c. *Count Three: Discriminatory Terms and Conditions of Employment*

■ In order to establish a claim for unlawful employment discrimination under Title VII, a plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.' " *Hawn v. Executive Jet Mgmt., Inc.,* 615 F.3d 1151, 1156 (9th Cir.2010) (quoting *Godwin,* 150 F.3d at 1220). Plaintiffs may establish a prima facie case based on circumstantial evidence by demonstrating: (1) that they belong to a class of persons protected by Title VII; (2) that the plaintiffs were qualified for their positions and performing their jobs satisfactorily; (3) that they experienced adverse employment actions; and (4) that similarly situated individuals outside of their protected class were treated more favorably, or other circumstances surrounding the adverse employment action giving rise to an inference of discrimination. *Hawn,* 615 F.3d at 1156 (citing *Peterson v. Hewlett–Packard Co.,* 358 F.3d 599, 603 (9th Cir.2004)); *see McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

■ Global challenges the sufficiency of the EEOC's allegations on the ground that the EEOC has failed to show that similarly situated non-Thai workers were treated more favorably than the Thai Claimants. (Global Mot. at 12.) The Ninth Circuit has made clear that discriminatory intent does not require a comparison to similarly situated individuals but rather may be shown by "other circumstances surrounding the adverse employment action [that gives] rise to an inference of discrimination." *Hawn,* 615 F.3d at 1156. In any event, contrary to Global's contention, the TAC does include allegations that similarly situated non–Thai workers were treated more favorably than Thai workers.

■ The Court concludes that the EEOC has alleged sufficient facts to plausibly suggest a claim for discriminatory terms and conditions of employment against Defendant Global. The TAC contains numerous allegations that give rise to an inference of unlawful discrimination, including allegations that Global supervisors pressured Thai Claimants to work more than workers of other nationalities (TAC ¶¶ 243–244, 467) and allegations that Thai Claimants · were paid less than non-Thai workers (TAC ¶¶ 468, 546). Furthermore, Global's alleged recruiting practices and statements made by Global employees with respect to the recruitment of Thai workers give rise to an inference that Global's subsequent discriminatory treatment of the

Claimants was because of their race and/or national origin. (TAC ¶¶ 88, 103–104 (alleging that Global sought to hire Thai workers because they would be less likely to run away or complain).)

### d. *Count Four: Retaliation*

To state a claim for retaliation under Title VII, a plaintiff must demonstrate that: "(1) the employee engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment decision." *Davis*, 520 F.3d at 1093–94; *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.2003).

Conduct constituting a "protected activity" includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and "engaging in other activity intended to oppose an employer's discriminatory practices." *Raad*, 323 F.3d at 1197 (citing 42 U.S.C. § 2000e–3(a)) (internal quotation marks omitted). The Ninth Circuit has held that "an employee who complains of a practice that has a disproportionate impact on a protected group complains of unlawful discrimination and is protected by the opposition clause." *Gifford v. Atchison, Topeka & Santa Fe Ry. Co.*, 685 F.2d 1149, 1157 (9th Cir.1982). The complaining employee need not "be aware that the practice is unlawful under Title VII at the time of the opposition in order for opposition to be protected." *Id.*

As for the second factor, "adverse employment action" has been interpreted to mean "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir.2000) (adopting the EEOC test for determining whether an act

constitutes an "adverse employment action," as set forth in EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). The Ninth Circuit has "found that a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Id.* at 1240. Examples include termination, lateral transfer, and unfavorable performance reviews. *See Davis*, 520 F.3d at 1094 (noting that termination is clearly an adverse employment action); *Hashimoto v. Dalton*, 118 F.3d 671, 674 (9th Cir.1997) (finding that "dissemination of adverse employment references" constitutes an adverse employment action); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) ("Transfers of job duties and undeserved performance ratings ... constitute adverse employment decisions.")(internal quotations omitted).

Finally, the "causal link" between protected activity and adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1375. "[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir.2002).

Global argues that "Claimants *never* complained to [Global] that they were being discriminated against or harassed," and thus did not engage in protected activity. (Global Mot. at 13.) In its March 16, 2012 and October 9, 2012 Orders, the Court rejected a similar argument advanced by the Farm Defendants: that complaints regarding unpaid wages and poor living and working conditions do not constitute protected activity if the com-

plainant does not explicitly allege discriminatory treatment. As the Ninth Circuit held in *Gifford,* a complaining employee need not be aware that a complained-of practice violates Title VII in order for the complaint to be protected. 685 F.2d at 1157. After all, "[i]t requires a certain sophistication for an employee to recognize that an offensive employment practice may represent ... discrimination that is against the law." *Id.*

■ The Court concludes that Plaintiff has alleged sufficient facts to state a retaliation claim against Global. Specifically, the TAC alleges that Claimants engaged in protected activity by complaining about Global's failure to pay their wages, poor living conditions, and lack of food and water. (TAC ¶¶ 138, 245, 256, 361, 553.) These complaints were made directly to Global supervisors, including Wongsesanit and Tubchumpol, or were communicated to Global supervisors by individuals employed by Farm Defendants. (TAC ¶¶ 256, 367, 417, 503, 556.) The TAC further alleges that Claimants were subjected to adverse employment actions as a direct result of their complaints, including retaliatory transfers to less desirable farms, denial of work, threats of deportation, threats of physical abuse, and being targeted for humiliating treatment. (TAC ¶¶ 257–261, 321, 367–370, 416, 422–424, 503–507.)

## II. *Timeliness*

### a. *Statute of Limitations*

The EEOC asserts its claims pursuant to §§ 706 and 707 of Title VII, 42 U.S.C. §§ 2000e–5 and 2000e–6. (TAC ¶ 1 ("This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) and 707 of Title VII of the Civil Rights Acts of 1964.").) Section 706 authorizes the EEOC to sue on behalf of one or more "persons aggrieved" by an unlawful employment practice. 42 U.S.C. § 2000e–

5(f). Section 707 allows the EEOC to "investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission." 42 U.S.C. § 2000e–6(e).

"The aim of § 707 actions is eradication of broad based systematic discrimination," while "[t]he thrust of § 706 actions ... is vindication of individual instances of discrimination." *EEOC v. Continental Oil Co.,* 548 F.2d 884, 887 (10th Cir.1977) (citing *United States v. Int'l Ass'n of Bridge Workers,* 438 F.2d 679 (7th Cir.1971)). Accordingly, while the EEOC may sue an employer under § 706 or § 707, an individual injured by an employer's unlawful employment practices may bring a suit under § 706 only.

Section 707 does not contain a statute of limitations specifying a certain period within which the EEOC must bring a pattern or practice claim. However, § 707(e) provides that "the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination," and "[a]ll such actions shall be conducted in accordance with the procedures set forth in [§ 706]." 42 U.S.C. § 2000e–6(e). Section 706 in turn provides that:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in the case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or. to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred

days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e–5(e)(1).

Defendants Global, Kauai Coffee, A & B, MZB, Kelena Farms, Maui Pineapple, and Mac Farms (collectively, "Moving Defendants") urge the Court to find that § 706's 300–day limitations period[2] applies to § 707 pattern-or-practice claims brought by the EEOC. (Global Mot.; Docs. ## 375–378.) The Court rejected this very same argument brought by some of the very same defendants in its November 2, 2011 Order Granting Defendants' Motions to Dismiss the First Amended Complaint. (Doc. # 124 at 34–36.) In that Order, the Court acknowledged that district courts across the country have issued divergent rulings on the issue. *Compare EEOC v. Sterling Jewelers, Inc.,* No. 08–CV–706, 2010 WL 86376 at *2–6 (W.D.N.Y. Jan. 6, 2010) (holding that § 706's statute of limitations does not apply to claims brought by the EEOC under § 707), *and EEOC v. L.A. Weight Loss,* 509 F.Supp.2d 527, 535 (D.Md.2007) (same), *and EEOC v.*

*Mitsubishi Motor Mfg. of America, Inc.,* 990 F.Supp. 1059, 1084 (C.D.Ill.1998) (same), *with EEOC v. Kaplan Higher Educ. Corp.,* 790 F.Supp.2d 619, 623 (N.D.Ohio 2011) (holding that the time limitation in § 706 is applicable to § 707 pattern-or-practice suits), *and EEOC v. Bloomberg L.P.,* 751 F.Supp.2d 628, 645 (S.D.N.Y.2010) (holding that "the charge-filing requirement operates in a section 707 case brought based on individual charges"). The Court then went on to point out that it was among the district courts that had concluded that the time limitation in § 706 is not applicable to actions brought pursuant to § 707, having so ruled in *EEOC v. Scolari Warehouse Mkts., Inc.,* 488 F.Supp.2d 1117, 1136 (D.Nev.2007) (Ezra, J.).

In its November 2, 2011 Order, this Court concluded that the defendants had not advanced any persuasive reason for the Court to depart from its decision in *Scolari.* The Court rejected defendants' arguments based on the "plain language" of § 707(e).[3] (*See* Doc. # 124 at 37–38.)

---

2. The 300–day limitations period is applicable in this case because Title VII extends the 180–day period to 300 days if filed in a "worksharing" jurisdiction. *See* 42 U.S.C. § 2000e–5(e)(1); 29 C.F.R. § 1601.13(a)(4)(ii)(A) (providing that employees have 300 days to file a charge where a worksharing agreement exists between the EEOC and local agencies). *See also Stiefel v. Bechtel Corp.,* 624 F.3d 1240, 1244 (9th Cir.2010) (noting that in states with a worksharing agreement in effect, a charge filed with a state agency is deemed dual-filed with the EEOC on the same day, and vice versa). Hawaii and California are both "worksharing" states such that administrative claims filed with the EEOC are deemed "dual-filed" with the state's local agency and vice versa. *See Surrell v. Cal. Water Serv. Co.,* 518 F.3d 1097, 1104 (9th Cir.2008) (charge filed with DFEH deemed filed with EEOC pursuant to a work-sharing agreement between the two entities); *McCarthy v. R.J. Reynolds Tobacco Co.,* 819 F.Supp.2d 923, 935 (E.D.Cal.2011) (filing of plaintiff's EEOC complaint is deemed to be a filing with the

California Department of Fair Employment & Housing ("DFEH")); *E.E.O.C. v. NCL America, Inc.,* 504 F.Supp.2d 1008, 1010 (D.Haw. 2007) ("Hawaii is a 'worksharing' state such that administrative claims with the EEOC are deemed 'dual-filed' with the Hawaii Civil Rights Commission ("HCRC") (or vice-versa)."). Claimant Marut Kongpia filed a charge against Global with the DFEH (Doc. # 381 Ex. 2); Claimant Mongkol Bootpasa filed a charge against Kauai Coffee with the HCRC (Doc. # 20 Ex. 3); Claimant Itthi Oa-Sot filed a charge against Maui Pineapple with the HCRC (Doc. # 29 Ex. 5); Claimant Janporn Suradanai filed a charge against Kelena Farms with the DFEH (Doc. # 36 Ex. 6); and Claimant Suthat Promnonsri filed a charge against Mac Farms with the HCRC (Doc. # 376 Ex. 2).

3. Defendants argued that the 300–day limitations period is a procedure made applicable to § 707 by its provision specifying that all actions under that section "shall be conduct-

The Court reasoned that, contrary to defendants' arguments,

> [a] plain reading of the text . . . suggests to the Court that the "actions" referenced in § 707 relate to the EEOC's "authority to investigate and act on a charge of a pattern or practice of discrimination." *Id.* § 2000e–6(e). This conclusion is bolstered by the fact that subsection (e) is entitled "Investigation and *action by Commission* pursuant to filing of charge of discrimination." *Id.* This suggests that the "actions" referred to in the subsection is the "action by Commission" and not any action which must be performed by a claimant. Nowhere in § 707 is there any mention of the time period in which a claimant must file a complaint with the EEOC. . . . The Court therefore concludes, as it did in *Scolari,* that "a statute of limitations does not apply when the EEOC brings a pattern-or-practice suit." 488 F.Supp.2d at 1136.

(*Id.*)

The Moving Defendants now ask the Court to reconsider its previous ruling in this case in light of a spate of recent decisions applying § 706's time limitation to § 707 pattern-or-practice claims.[4] (Docs. ## 375–378.) No Court of Appeals has addressed the issue. However, Defendants assert that since this Court issued its November 2, 2011 Order, every district court to address the question has held that the statute of limitations set forth in § 706 applies to suits brought under § 707. (*See, e.g.,* Doc. # 375 at 5 ("Since November 2011, district courts have *unanimously* held that the statute of limitations in § 706 applies to the EEOC's § 707 pattern or practice claims.")). Defendants identify

six such cases decided in the past year. *See EEOC v. Princeton Healthcare Sys.,* No. 10–4126(PGS), 2012 WL 5185030 (D.N.J. Oct. 18, 2012); *EEOC v. Presrite Corp.,* No. 11 CV 260, 2012 WL 3780351 (N.D.Ohio Aug. 30, 2012); *EEOC v. Global Horizons, Inc.,* No. CV11–3045–EFS, 2012 WL 3095577 (E.D.Wash. July 27, 2012) ("*Global Horizons WA*"); *EEOC v. U.S. Steel Corp.,* No. 10–1284, 2012 WL 3017869 (W.D.Pa. July 23, 2012); *EEOC v. PBM Graphics Inc.,* 877 F.Supp.2d 334 (M.D.N.C.2012); *EEOC v. Bass Pro Outdoor World, LLC,* 884 F.Supp.2d 499, 2012 WL 1965685 (S.D.Tex. May 31, 2012).

 The Moving Defendants claim that this Court has the discretion to reconsider its previous ruling. They are correct. Under the law of the case doctrine, a court is "generally precluded from reconsidering an issue previously decided by the same court" if "the issue in question [was] 'decided explicitly or by necessary implication in [the] previous disposition.'" *United States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir.2000) (quoting *Liberty Mutual Ins. Co. v. EEOC,* 691 F.2d 438, 441 (9th Cir.1982)). The doctrine is not, however, "an inexorable command, . . . nor is it a limit to [a court's] power." *United States v. Smith,* 389 F.3d 944, 949 (9th Cir.2004) (internal quotation marks and citations omitted). Rather, its application is discretionary, *id.,* and a trial judge in particular has broad discretion to reconsider rulings made pre-trial. *See Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1186 (9th Cir.2006) ("[T]here is no imperative duty to follow the earlier . . . ruling—only the desirability that suitors shall, so far as possible, have reliable

---

ed in accordance with the procedures set forth in [§ 706]." (*See, e.g.,* Doc. # 39 Ex. 1 at 24–26 (quoting 42 U.S.C. § 2000e–6(e))).

4. Defendant Global does not, in fact, acknowledge the Court's previous ruling, perhaps unaware that the Court so ruled, given its long absence from the case. (Global Mot.)

guidance how to conduct their affairs.") (quoting *Amarel v. Connell,* 102 F.3d 1494, 1515 (9th Cir.1996)). "A district court abuses its discretion in applying the law of the case doctrine only if (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Ingle v. Circuit City,* 408 F.3d 592, 594 (9th Cir.2005).

 Here, then, the Court is not precluded from reversing its previous position and finding that § 707 pattern-or-practice claims are subject to § 706's statute of limitations. Nor is the Court compelled to change course; Moving Defendants acknowledge that the cases they claim represent an intervening change in the law are not binding on this Court. (Docs. ## 392, 393.) However, the Court is persuaded, upon reexamination of the statute, that pattern-or-practice claims brought by the EEOC under § 707 are in fact limited by the 300–day charge-filing period set forth in § 706.

Section 707 mandates that certain "actions" must be conducted in accordance with the procedures set forth in § 706. 42 U.S.C. § 2000e–6(e). In its November 2, 2011 Order, the Court concluded that the "actions" referred to in § 707(e) are the actions taken by the EEOC in pursuit of its "authority to investigate and act on a charge of a pattern or practice of discrimination," rather than actions performed by a claimant (such as the filing of a charge). (Doc. # 124 at 38 (quoting 42 U.S.C. § 2000e–6(e)).) In other words, the Court found that, pursuant to § 707(e), when the EEOC investigates and acts on a charge of a pattern or practice of discrimination, its actions must accord with the procedures set forth in § 706. The Court remains convinced that this reading of § 707 is correct, and rejects defendants' contention that "actions" refers to *legal actions* filed by the EEOC pursuant to § 707. (Doc. # 391 at 6 ("[T]he term 'actions' necessarily includes pattern or practice actions based on charges of discrimination filed by the EEOC *or* individual claimants.").)

The question, then, is whether the EEOC is constrained by the charge-filing time limitation provided for in § 706(e)(1) despite the fact that § 707(e) refers only to the EEOC's efforts to investigate and act on charges of discrimination, not actions taken by the charging parties or legal actions brought under § 707 generally. In its November 2, 2011 Order, this Court concluded that, based upon the plain language of the statute, the EEOC was *not* constrained by the time limitation because § 707(e) refers only to actions by the EEOC, not by claimants. (Doc. # 124 at 38.) Upon a careful reexamination of the statute's text, the Court finds that the EEOC is, in fact, constrained by the time limitation, for the following reasons.

Section 707(e) empowers the EEOC to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person aggrieved or by a member of the Commission itself. 42 U.S.C. § 2000e–6(e). When investigating and acting on such charges of discrimination, the EEOC must act in accordance with the procedures set forth in § 706. *Id.* One such procedure mandates that any charge of discrimination be filed within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1). The actual filing of such a charge is not an "action" within the meaning of § 707(e), because the "actions" contemplated by § 707(e) necessarily occur after a charge has been filed. *See* 42 U.S.C. § 2000e–6(e) (entitled "[i]nvestigation and action by Commission *pursuant to filing of charge of discrimination* ") (emphasis added).

However, by the same token, the "actions" contemplated by § 707(e) are plainly dependent upon the filing of a charge. *See id.* ("[T]he Commission shall have authority to investigate and act on *a charge of . . . discrimination.*") (emphasis added). Nothing in §§ 706 or 707 indicates that a charge acted upon by the EEOC pursuant to § 707 is not subject to the same time limitations as charges acted upon by the EEOC or an aggrieved individual pursuant to § 706. *See Bass Pro,* 884 F.Supp.2d at 523, 2012 WL 1965685, at *19 ("Nothing in the text of Section 706 or 707 suggests that the EEOC can recover for individuals whose claims are otherwise time-barred.")(quoting *EEOC v. Freeman,* No. RWT 09cv2573, 2010 WL 1728847, at *4 (D.Md. Apr. 27, 2010)); *Kaplan,* 790 F.Supp.2d at 623 (same); *see also EEOC v. Burlington Med. Supplies,* 536 F.Supp.2d 647, 659 (E.D.Va.2008) ("The EEOC's special statutory mandate does not entitle it to 'expand substantive rights, such as reviving stale claims' that would not otherwise be actionable under Title VII.")(quoting *EEOC v. Custom Cos.,* Nos. 02 C 3768, 03 C 2293, 2004 WL 765891, at *10–11 (N.D.Ill. Apr. 7, 2004)). Thus, because the EEOC's ability to act under § 707 is necessarily dependent upon the existence of a properly filed charge of discrimination,[5] its authority is subject to the charge-filing requirements found in § 706, including the requirement that charges be filed within 300 days of the discrimination complained of.

Most of the courts to reject the applicability of § 706's limitations period to § 707 pattern-or-practice claims have done so in spite of the statute's plain language, on the basis of practical and policy concerns. *See, e.g., L.A. Weight Loss,* 509 F.Supp.2d at 535 ("The language of [§ 706] and [§ 707] is not so plain as to warrant the application of [§ 706's] limitations period. . . . Imposing the limitations period in [§ 706] would be inconsistent with the very nature of a pattern or practice violation.")(internal quotation marks and citations omitted); *Mitsubishi,* 990 F.Supp. at 1085 (concluding that "the limitations period applicable to § 706 actions does not apply to § 707 cases, despite the language of § 707(e)," because Congress intended the EEOC's authority to be broad in scope and a pattern-or-practice claim is "not amenable to a timeliness determination"); *see also Bloomberg,* 751 F.Supp.2d at 646 (noting that the cases that have held that § 707 claims are not subject to the limitations period "rely on or emulate the reasoning of *Mitsubishi,* which primarily focused on a distinction between pattern or practice charges and individual charges"). This Court, however, will not disregard the statute's text or ignore its plain meaning in order to accommodate policy concerns. "If the language of the statute is clear, [the Court] need look no further than that language in determining the statute's meaning." *United States v. Hanousek,* 176 F.3d 1116, 1120 (9th Cir.1999).

■■■ Accordingly, the EEOC's pattern-or-practice claims brought pursuant to § 707 are subject to a 300–day charge-filing limitation.[6] Discrete acts of discrim-

---

**5.** The Court does not suggest that the timely filing of a charge is a jurisdictional prerequisite; on the contrary, the Supreme Court has held that it is not. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite

to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

**6.** The Court has previously noted that to the extent Plaintiff alleges theories of liability pursuant to § 706, Plaintiff is bound by the 300–day charge-filing limitation; there is no dispute in that regard.

ination, such as a retaliatory transfer or termination, must have occurred within 300 days of the date a charge was filed in order to be actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Cherosky v. Henderson*, 330 F.3d 1243, 1245–46 (9th Cir.2003) ("*Morgan* makes clear that claims based on discrete acts are only timely where such acts occurred within the limitations period."). Plaintiff's hostile work environment claims, on the other hand, will survive as long as all acts constituting the claim are part of the same unlawful employment practice and any act occurred within the 300–day charge-filing period.[7] *Morgan*, 536 U.S. at 122, 122 S.Ct. 2061; *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir.2005) (applying *Morgan* to a hostile work environment claim).

At this stage, the Court cannot determine as a matter of law that the 300–day limitations period bars any of Plaintiff's claims. " '[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.' " *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.2010) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir.1995)). It is not clear based on the TAC and the EEOC charges[8] that the EEOC can prove no set of facts that would establish the timeliness of its many claims. The Court therefore declines to dismiss any of Plaintiff's claims on the statute of limitations grounds advanced by the Moving Defendants.

### b. *Laches*

 Defendant Global also argues that the EEOC's claims are barred by the doctrine of laches. (Global Mot. at 21.) The Ninth Circuit recognizes "laches or an unreasonable delay prejudicing the defen-

---

**7.** Related claims may be similarly salvageable. In a case involving some of the same parties and issues involved in this case, the United States District Court for the Eastern District of Washington held that constructive discharge and pattern and practice claims that stem from a hostile work environment claim are timely as long as any contributory acts occurred within the relevant 300–day period. *Global Horizons, WA*, 2012 WL 3095577, at *7. A number of other courts have compared or equated constructive discharge claims to hostile work environment claims for purposes of the *Morgan* timeliness analysis. *See Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 28 (1st Cir.2002) ("Just as an act of harassment that is not actionable in and of itself may form part of a hostile work environment claim, [plaintiff]'s experiences during her last week of work—although insufficient to establish liability on their own—are properly part of her constructive discharge claim.") (citing *Morgan*, 536 U.S. at 115, 122 S.Ct. 2061); *Wilson v. N.Y.C. Police Dep't*, No. 09 Civ. 2632, 2011 WL 1215031, at *7 (S.D.N.Y. Feb. 4, 2011) ("With respect to claims alleging a hostile work environment,

including a claim for constructive discharge, at least one action giving rise to the hostile environment or constructive discharge claim must take place within the 300–day period."); *cf. Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 370 (D.C.Cir.2007) (declining to decide "whether, after *Morgan*, constructive discharge claims (like hostile work environment claims) by their 'very nature involve [] repeated conduct,' and are thus amenable to continuing violations analysis"). *But see Karges v. Charleston Cnty. Sheriff's Office*, No. 2:08–2163, 2010 WL 1303455, at *8 (D.S.C. Mar. 5, 2010) (noting that while a constructive discharge claim is akin to a hostile work environment claim, the actual discharge itself is a "discrete and identifiable act").

**8.** Although courts are generally precluded from considering material not contained within the complaint in ruling on a motion to dismiss, the Court may take judicial notice of matters of public record, such as an EEOC charge. *See Intri–Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1053 (9th Cir. 2007).

dant ... as a defense to a Title VII action brought by the EEOC." *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 959 (9th Cir.1979); *see also Gifford*, 685 F.2d at 1152 ("This court has affirmed the dismissal on the ground of laches of both private Title VII suits ... and suits brought by the EEOC."). A claim is barred by laches upon a finding that (1) the plaintiff's delay was unexcused or unreasonable, and (2) the delay caused prejudice to the defendant. *See Boone*, 609 F.2d at 958.

■ Determining whether delay was unexcused or unreasonable and whether prejudice ensued necessarily demands "a close evaluation of all the particular facts in a case." *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir.2000). As a result, a claim is not easily disposed of at the motion to dismiss stage based on a defense of laches. *See Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir.2005) (overruled on other grounds by *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)) (concluding that a laches defense was premature at the motion-to-dismiss phase because of the difficulty of establishing such a defense based exclusively upon the factual allegations set forth in the complaint); *cf. Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666–67 (9th Cir.1980) ("Laches questions are seldom susceptible of resolution by summary judgment, because where laches is raised as a defense the factual issues ... involved can rarely be resolved without some preliminary evidentiary inquiry.")(internal quotation marks and citations omitted).

■ The Court concludes that it is not clear on the face of the complaint that the EEOC's delay in bringing suit was unreasonable or unexcused, and therefore declines to find that the EEOC's claims are barred by laches at this juncture. Five years lapsed between the date a charge was filed against Global with the EEOC and the date the EEOC instituted this suit.[9] The passage of five years does not by itself establish unreasonable delay. *See, e.g., EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir.1978) ("We are unwilling to say that any set length of delay is per se unreasonable, but rather look to the facts of each case to determine reasonableness."); *EEOC v. Autozone, Inc.*, 258 F.Supp.2d 822, 826–27 (W.D.Tenn.2003) ("[T]he reasonableness of the EEOC's delay does not depend on the total amount of time between filings, but on the EEOC's reason for the delay."); *EEOC v. Peterson, Howell & Heather, Inc.*, 702 F.Supp. 1213, 1222 (D.Md.1989) ("This Court, consistent with other courts, refuses to find any specific period of delay by the EEOC unreasonable *per se*."). It is not impossible that the EEOC could advance reasonable justifications for a delay of five years.[10] *See Gifford*, 685 F.2d at 1152 (holding that the district court did not err in denying summary judgment on the basis of laches where plaintiff submitted an extensive affidavit with excuses for 9–year delay).

Moreover, Defendant Global has not adequately demonstrated prejudice. "Courts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based." *Danjaq LLC v. Sony*

---

**9.** Marut Kongpia's charge was filed on April 18, 2006 (Doc. # 381 Ex. 2), and the EEOC's initial Complaint was filed on April 19, 2011 ("Compl.," Doc. # 1).

**10.** The EEOC attempts to excuse the five year delay by arguing that the hundreds of charges filed against Global and the Farm Defendants

took years to investigate and process. (Doc. # 381 at 29.) The Court notes that in the Ninth Circuit, "[t]he agency's workload has been rejected as an excuse for unreasonable delay." *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88 (9th Cir.1980).

*Corp.,* 263 F.3d 942, 955 (9th Cir.2001). The former "includes such things as lost, stale or degraded evidence, or witnesses whose memories have faded or who have died." *Id.* The latter "occurs when a defendant 'took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" *Evergreen Safety Council v. RSA Network Inc.,* 697 F.3d 1221, 1227 (9th Cir.2012) (quoting *Danjaq,* 263 F.3d at 955). Global has failed to establish either with its allegation that it has no Human Resources department to facilitate the collection of evidence; its complaint that the CEO, "besieged by a recently dismissed criminal indictment," cannot possibly respond to the TAC's allegations himself; and its claim that "[p]otentially many of [Global's] key employees ... would not be able or available to testify at trial." (Global Mot. at 25.) Global's claim that the fact of delay creates a presumption of prejudice is incorrect. *See Bratton,* 649 F.2d at 667 n. 8 (observing that its statement to that effect in *Boone,* 609 F.2d at 958, was dictum). In fact, the Ninth Circuit has indicated that "[w]hatever may be an appropriate use of presumptions in lache's cases not involving Title VII, we believe that prejudice should not be lightly presumed from delay in Title VII cases." *Id.*

### CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Defendant Global's Motion to Dismiss (Doc. # 371) and the Substantive Joinders thereto (Docs. ## 375–378) insofar as the Court holds that a 300–day limitations period applies to claims brought by Plaintiff under 42 U.S.C. § 2000e–6. The Court **DENIES** Defendant Global's Motion to Dismiss and the Substantive Joinders thereto to the extent Plaintiff's claims are not time-barred.

IT IS SO ORDERED.